**UNITED STATES of America, Plaintiff–Appellant,**

**v.**

**Jesus CERVANTES, also known as Roberto Cervantes, Defendant–Appellee.**

**No. 91–3705.**

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 30, 1991.

Decided Jan. 16, 1992.

---

Barry R. Elden, Asst. U.S. Atty., Office of U.S. Atty., Crim. Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellant.

Edward M. Shishem, Shishem & Bailey, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, POSNER and EASTERBROOK, Circuit Judges.

PER CURIAM.

Roberto Cervantes is awaiting trial on an indictment charging that he sold cocaine. Beyond the strength of the charge (Cervantes was found with the money used to make the buy) nothing about the offense is relevant; truth is for the jury. Invoking 18 U.S.C. § 3142(e), the prosecutor asked the court to detain Cervantes pending trial. Magistrate judge Rosemond issued a detention order, but district judge Shadur enlarged Cervantes on $200,000 bail. We stayed his release during accelerated consideration of the prosecutor's appeal.

When arrested on the indictment, Cervantes identified himself as Jesus Cervantes and presented an alien registration card ("green card") bearing the name Jesus Cervantes–Manzo. He also carried a firearm owner's identification card in the name of Jesus M. Cervantes. Finally, he tendered a certificate registering his shotgun in the name Jesus Cervantes. (The agents seized the shotgun.) All three documents bore his photograph. During interviews, Cervantes told agents that his wife Rosa Maria and their three children live in Mexico. He denied owning real property in Chicago or having any assets in the United States other than a car; according to defendant the house where he was arrested belongs to his brother Roberto, with whom he was staying. The prosecutor presented these statements to the magistrate judge, who ordered Cervantes detained on the ground that with no assets to post as security and no ties to Chicago (or the United States) Cervantes poses a substantial flight risk.

Before Judge Shadur, Cervantes told a different story. He was no longer Jesus Cervantes. Now he was Roberto Cervantes, with wife (Santan Ana) and two children in Chicago. His counsel told the judge that Cervantes owns three parcels of real estate in or near Chicago, including a commercial building purchased for $180,000 while Cervantes was in detention, and operates a profitable kitchen-ware business. According to counsel, Roberto Cervantes sometimes uses the name of his deceased brother Jesus because he likes that name. Cervantes offered to post the three buildings and a fourth owned by a friend as security for bail. Counsel argued that Roberto Cervantes, a long-time resident of Chicago with family and property here, is unlikely to flee.

The prosecutor was nonplussed by the defendant's incourt change of identity—but he was also prepared, for the fingerprints taken on the arrest of "Jesus Cervantes" turned out to be the same as the fingerprints of a "Roberto Manzo–Cervantes" who had been convicted in 1972 of peddling heroin in California. "Roberto Manzo Cervantes" has been deported from the United States at least twice, returning after each and eventually receiving the right to reside here on representing that he had married an American citizen. The heroin conviction led the INS to revoke Roberto's status as a lawful resident and issue an order for his deportation. That order has not been executed because Roberto vanished. After the court of appeals affirmed his conviction in 1973, Roberto, who had been released on $7,500 bond, did not appear to serve his sentence.

Cervantes was arrested in 1982 when reentering from Mexico and began serving his time—a 12–year sentence that had been suspended in favor of six months of jail plus probation. He assured the judge that his lawyer's failure to tell him that the conviction had been affirmed led to his failure to appear. Apparently the judge in California believed this, because he did not reinstate the original 12–year sentence. Cervantes does not tell us why he made no inquiries of court or lawyer. After his

release Cervantes returned to Chicago, where he had been living since 1979. He acquired property in the name of Roberto Cervantes but used the name Jesus Cervantes to buy the shotgun. The drug conviction prevented Roberto Cervantes from owning weapons no matter what name he used, but it is harder to connect the applicant to the conviction if the name changes. Roberto's first application for a green card in the name "Jesus Cervantes" represented that he was born in Michoacán, Mexico, and is married to a citizen of the United States. An attached document from the public official in Michoacán responsible for keeping records related that his office had no birth certificate or other record for a Jesus Cervantes. Apparently no one at the INS bothered to translate or read this document, for the green card duly issued.

Whether defendant is Roberto Cervantes sometimes calling himself Jesus Cervantes, or the other way around, he is a slippery fellow. His lawyer's assertion that the mixup occurred because the defendant just likes the sound of "Jesus Cervantes" is preposterous. When arrested, Cervantes claimed that he had no ties to Chicago (but a family in Mexico) and he was staying with his brother Roberto; before Judge Shadur, Cervantes claimed that he owned real property in Chicago, where he lives with wife and family. This is not one person choosing a more euphonious name; it is an effort to maintain two identities. And each of the identities has trouble qualifying for release before trial. "Jesus Cervantes" has no assets or family in the United States and no reason to remain here if released. "Roberto Cervantes" did not appear to serve an earlier prison term, obtained a green card improperly, is a fugitive from an INS warrant for his arrest and deportation, and illegally purchased a shotgun under an assumed name. If his counsel's representations are correct (all of the facts we have recited come from proffers by counsel; there has been no testimony), even the bond of $200,000 is illusory. Counsel says that Cervantes bought the buildings on borrowed money (how else to explain the cash that "Roberto" used to buy the building while "Jesus" was in jail?). If Cervantes goes into hiding he will lose the buildings and avoid his debts, but if he stays he will have to pay the "creditors" a sum almost equal to the amount of the bond. The net loss is about $34,000.

It would be folly to allow such a person to remain free pending a trial that could end in a substantial prison term. Now it may be that there are cogent explanations for all of this, but Cervantes offers none. Our review of findings of fact is deferential, but the district judge did not make any findings. Remarking on the disparity in the reported ages of Cervantes' children, Judge Shadur said: "There may indeed be a family in Mexico for all I know." Apparently, then, the judge has not selectively accepted Cervantes' contentions while rejecting all of the facts adduced by the prosecutor.

Detention pending trial is appropriate when no condition "will reasonably assure the appearance of the person as required and the safety of ... the community". 18 U.S.C. § 3142(e). Drug offenders presumptively threaten the safety of the community, § 3142(f)(1)(C); the district judge did not address that presumption or find that Cervantes poses no such threat. See *United States v. Daniels*, 772 F.2d 382 (7th Cir.1985). Moreover, this circuit does not defer to the district court's appreciation of the ultimate questions concerning the probability of appearance or dangerousness. *United States v. Portes*, 786 F.2d 758, 763 (7th Cir.1985). The statutory presumption of dangerousness is unrebutted, and we are persuaded that the defendant—no matter his right name and family situation—is a poor prospect for bail. In the end the standard of review makes no difference; any finding that Cervantes is reasonably likely to appear for trial would be clearly erroneous. One of the district judge's comments suggests that despite the formal order releasing Cervantes he, too, doubted that the bond would suffice:

> Obviously I am going to require surrender of his passport, although I have commented jocularly in another case when the defendant vanished on the date set for trial, that maybe the judges in our

District ought to reconsider and say in these cases that the defendants should keep their passports and should have the nearest travel agency identified so it saves the government a lot of money. But in any event, I am going to require surrender of the passport.

Passports make little difference to persons who have found other ways to cross borders. Cervantes has crossed national borders and personal identities with little regard for law or truth. He belongs in custody until the jury determines his fate.

REVERSED.