**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ramiro Perez LOPEZ, Defendant–Appellant.**

**No. 91–3200.**

United States Court of Appeals, Seventh Circuit.

Submitted July 22, 1992.

Decided Aug. 21, 1992.

John P. Schmidt, Office of U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Monroe McWard, Taylorville, Ill., for defendant-appellant.

Before EASTERBROOK and KANNE, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

Ramiro Perez Lopez, a citizen of Mexico, has entered the United States illegally many times and been deported almost as often. He has been arrested not only for the purpose of deportation but also on criminal charges of assisting other aliens to enter the United States illegally, in addition to other offenses (most recently grand theft). Although Perez has a lengthy record, many of the sentences were short or suspended on condition that he leave the United States. This time the prosecutor persevered, and Perez pleaded guilty to reentering the United States without authorization after having been deported. 8 U.S.C. § 1326(b)(1).

The sentencing guidelines prescribe a range of 37–46 months' imprisonment for this offense, given Perez's criminal history category of VI and a two-level enhancement for obstruction of justice. Nabbed driving a van packed with illegal aliens while on probation from another conviction, Perez fled after his arrest. When caught, he gave two different false identities, one of which he maintained during pretrial proceedings. Cf. *United States v. Cervantes*, 951 F.2d 859 (7th Cir.1992). Not until studying his fingerprints did agents learn who they had.

Perez does not contest the calculation of the range. The prosecutor recommended a sentence of 41 months in consideration of defendant's guilty plea. Perez argued for a sentence of 37 months, suspended on condition of deportation (again!). This solution, his lawyer submitted, would save the government the cost of incarceration.

The suggestion that Perez should be released as an economizing device got the district judge's dander up. He interrupted

defense counsel's presentation to deliver a harangue about aliens who reenter the United States. The judge opined that Perez should be locked away because that is cheaper than paying for federal agents to track down aliens: "[I]sn't it going to be cheaper to feed him and clothe him than it is to have all of our agents constantly running all over the country looking for Mr. Perez Lopez? ... It's kind of like a paper hanger. They plaster that paper all over the place. And the recidivism rate is worse than drugs. It gets in their bones and you can't get it out.... [A]ll of this points up a real problem that we have, you know, what do we do with this turkey?" After allowing defense counsel to conclude his argument—including a rerun of the contention that a suspended sentence would be cheaper for the federal government—the district judge once more asserted that custody would be the less expensive course: "Well, it's going to cost us about $1,450.00, $1,500.00 a month to take care of you. And quite frankly I think that's cheaper to the American Taxpayer to at least know where you are."

Eventually the judge sentenced Perez to 46 months' imprisonment, the top of the range. "All I can say is that apparently Mr. Perez, you know, likes our prison system. He figures three squares [square meals?] and a roof, and yellow jump suits. Be tough going down south of the border. That's all I can come to the conclusion, because he keeps coming back." Emphasizing that after the end of the prison term, and the inevitable deportation, Perez must not reenter the United States, the judge added: "[A]s soon as you get released and as soon as they [the INS] pick you up, and you get down to Del Rio or the border, wherever you're going to go across, don't turn around and look back. Just keep on going. Because if you come back up here to this district and you're in my courtroom, I'm going to pipe you away for so long they're going to have to package air and bring it to you.... You've already done this too many times and we're not going to screw around with it anymore. No threat. Just a promise. I don't want to see you around here again. And you stay the Hell off I–55. Period. At least you stay off it from Dwight down to Staunton. That's this district. I don't want to see you again. That's the sentence of this court."

The judge's tirade was inappropriate in both style and content. Sentencing is an occasion for decorous and solemn reflection. A judge imposing sentence represents the sovereignty of the United States. Although he may impress the defendant with the gravity of the criminal law and the seriousness of the offense, he should make every effort to suppress his idiosyncrasies. It is the Rule of Law, the court as custodian of governmental power, and not the judge-as-citizen, that speaks from the bench. A judge is transient but the court must speak for an enduring polity. No judge can eliminate the "I" in sentencing, but each must try. Although the judge has a duty station, he acts for the Nation; a crime is not the worse for being committed between Dwight and Staunton, Illinois, nor is an offender to be encouraged to move to some other district.

Judge Mills expressed disappointment that deported aliens reenter the United States notwithstanding adjurations to keep out. This court expresses parallel disappointment that a member of the bench is unable to contain himself at sentencing, notwithstanding adjurations to do so. E.g., *United States v. Szabo*, 854 F.2d 251, 254 (7th Cir.1988); *United States v. Schneider*, 910 F.2d 1569 (7th Cir.1990). Judicial officers unable or unwilling to respect norms articulated by this court ought not lord it over persons in the dock who have a different kind of recidivism problem.

Perez asks us to reduce his sentence in light of the judge's intemperate remarks. Rules of law bind judges no less than defendants, and the first requirement of any court is jurisdiction. Congress has not authorized appellate courts to alter sentences, imposed within a range properly determined under the Sentencing Guidelines, just because of inappropriate comments in court. Unless the court exceeds the guideline range, appellate jurisdiction depends on a conclusion that the sentence was "imposed in violation of law" or "as a result of

an incorrect application of the sentencing guidelines". 18 U.S.C. § 3742(a)(1), (2). See *United States v. Franz*, 886 F.2d 973 (7th Cir.1989).

Perez does not contend that his sentence was "imposed in violation of law". Does taking account of the costs of imprisonment versus apprehension render the sentence "an incorrect application" of the guidelines? Perez himself must believe not, for it was he who first raised the subject. We may assume that costs of incarceration and the other topics broached at Perez's sentencing are inappropriate reasons to give a sentence above or below a guideline range. Courts have great flexibility in picking a sentence within the range. See Guideline 1B1.4:

> In determining the sentence to impose within the guideline range ... the court may consider, without limitation, any information concerning the background, character, or conduct of the defendant, unless otherwise prohibited by law. *See* 18 U.S.C. § 3661.

See also § 5C1.1(a): "A sentence conforms with the guidelines for imprisonment if it is within the minimum and maximum terms of the guideline range." We drew the natural conclusion in *United States v. Klotz*, 943 F.2d 707 (7th Cir.1991), in holding that a fact that could not be used to exceed the range (the defendant's failure to cooperate with authorities) could nonetheless be used in selecting a sentence within the range. See also *United States v. Lara–Velasquez*, 919 F.2d 946, 955 (5th Cir.1990).

What happened at this sentencing should not be repeated. But Perez, who received a sentence within the guideline range, is not the victim of an "incorrect application" of the guidelines. Injuries inflicted on the judicial system and the public's respect for the law by indecorous remarks do not diminish the legal entitlements of the defendant and so do not fall within § 3742(a). The appeal is dismissed for want of jurisdiction.

HARLINGTON WOOD, Jr., Senior Circuit Judge, concurring.

Because of the focus of this review it gives no satisfaction to one having to review the work of a hardworking, experienced district judge, and then to state a critical assessment of it. Regrettably this panel had little choice.

I view the matter of our jurisdiction as possibly a closer issue than do my brethren. It is recognized that not every sentence which falls within the applicable sentencing guidelines is irrefutably insulated from review. Rather, such sentences are subject to review if imposed in violation of the law. 18 U.S.C. § 3742(a)(1). Although rare, a sentence that violates a defendant's due process rights to a fair trial is one imposed in violation of the law.

We have in the past, as mentioned above in this opinion, commented on certain language used at sentencing. In *United States v. Schneider*, 910 F.2d 1569, 1571 (7th Cir.1990), in which the judge referred to the defendant as "a flake," Judge Posner for the panel wrote, "[T]he use of slang in discharging the awesome duty of sentencing is regrettable." Unfortunately, considerable slang was again used in the present sentencing. For example, references were made to the penitentiary as "the slammer" or the "pigeon hole." The phrases were used "to screw around with it anymore," and "piping the defendant away for so long they're going to have to package air and bring it to you." The defendant was admonished in the future to stay the "hell" out of the judge's district. There is other abundant and effective language available for the judge to choose to forcefully impress the defendant with the seriousness and possible consequences of the defendant's acts. Nonetheless, the sentencing language used in this case does not rise to the level of a due process problem sufficient to give this court jurisdiction to review a sentence within the applicable guideline range. *See* 18 U.S.C. § 3742(a)(1).

In *Schneider* the judge referred to the defendant as a "flake," but this case I believe goes beyond that. Here the defendant is a Mexican National whom the judge during sentencing referred to as a "turkey." The use of that term could have

adverse connotations beyond the use of the term "flake" as applied to describe a citizen of our own. I have no reason to believe that Judge Mills has any ethnic bias whatsoever. I know that outside the record, but others do not, including this defendant. The use of that term applied to a Mexican National lends itself to an interpretation which might give the unfortunate appearance of possible prejudice and bias against citizens of Mexico.[1] Because of that possibility, in my view, it comes very close to a constitutional violation contrary to our accepted views, not just of language choice, but of fairness and due process in the important sentencing procedures in federal courts. In *Schneider* no fault was found with the content of the slang, but this is a more sensitive situation involving content and connotation. As such, this comes close to providing this court jurisdiction to review this sentence on that basis, an argument that in my judgment the defendant adequately raised in his brief. *See* 18 U.S.C. § 3742(a)(1).

Added to this is the district judge's dwelling on the economic benefits of incarcerating the defendant, a factor understandably not found in the sentencing guidelines. At the particular time in the sentencing process when the district judge first mentioned the economic question of whether it would cost the United States more or less to incarcerate the defendant because of his pattern of illegal entry into this country, the defendant's bad record was already before the court. That record was itself sufficient to justify a substantial sentence. Nevertheless, when referring to the defendant as a "turkey," the judge said he did not know what to do with the defendant. Then just before imposing sentence, the judge returned to the economics of it, speculating on the cost per month and came to the conclusion that it is "cheaper to the American taxpayer to at least know where you [the defendant] are." The defendant

was then sentenced to the maximum. This emphasis on the supposed economy in these particular times may have appeal to some, but it is nevertheless inappropriate. I am concerned that the economic emphasis could be seen as decisive in the sentence determination. To that extent it may have been an improper use of speculative and improper information. Using improper information at sentencing can be sufficient to give us jurisdiction. *See United States ex rel. Welch v. Lane,* 738 F.2d 863, 865 (7th Cir.1984) (violates due process to base sentence on materially untrue assumptions); 18 U.S.C. § 3742(a)(1) (jurisdiction to review a sentence imposed in violation of the law). Here the seed of the judge's economic discourse seems to have come from the defendant's counsel. It would have been advisable for the district court, if any comment was deemed necessary, to simply have advised defense counsel that economics was not a valid consideration in the sentencing context, rather than using it to justify the sentence imposed. The fate of people in the federal criminal justice system fortunately is not determined by a cost analysis which may be useful in other circumstances. Punishment is for other reasons.

Title 28, Section 2106 of the United States Code, grants a reviewing court some degree of supervision over the district courts. *See* 28 U.S.C. § 2106. That authority, like the due process clause, might have some application here, but for present purposes that possibility will not be explored. *See United States v. Curran,* 926 F.2d 59, 62–64 (1st Cir.1991) (relying on the appearance of injustice, the court invoked its supervisory powers to vacate and remand a sentence based in part on letters that the defendant was not given an opportunity to review); *United States v. Connor,* 950 F.2d 1267, 1278 (7th Cir.1991) (this court suggested, but did not hold, that it might be appropriate to invoke our supervi-

---

**1.** Our government and the Mexican government are presently endeavoring to improve understanding and cooperation between the judges of our respective countries. In the fall of 1991 a delegation of United States judges was sent by our State Department to Mexico City to meet

with Mexican judges. In August 1992 Mexican judges will return the visit and meet again with the United States judges in Washington, D.C. This judicial exchange has been viewed as useful and successful, diplomatically and judicially.

sory powers to remand a preguideline sentence that appeared to be partially based on information contained in newspaper clippings not presented to the parties). *See also United States v. Radix Laboratories, Inc.*, 963 F.2d 1034, 1040–43 (7th Cir.1992) (this court chose not to invoke its supervisory powers to vacate a pre-guideline sentence). A competent judge who conducts a sentencing as in this case makes it unnecessarily difficult for himself and for us and taints an otherwise good sentencing. It is well that judges as individuals have their own presiding styles as does Judge Mills, but care is required to keep within acceptable bounds.

If we had jurisdiction, and I think it is a very close question, I would have suggested that this sentence be vacated and the resentencing be by another judge, not only because Judge Mills may have committed a fundamental error, but because I believe it would have better served the appearance of justice, a very important consideration even for a very guilty defendant.