**UNITED STATES of America, Plaintiff,**

v.

**Ramiro Perez LOPEZ, Defendant.**

**No. 91–30050.**

United States District Court,
C.D. Illinois,
Springfield Division.

Oct. 2, 1992.

John Schmidt, Asst. U.S. Atty., Springfield, Ill., for plaintiff.

Monroe McWard, Taylorville, Ill., for defendant.

## MEMORANDUM OPINION

RICHARD MILLS, District Judge:

Defendant Perez is an illegal alien who pled guilty to reentry into the United States after deportation.

His considerable prior record gave him the highest criminal history category of VI and he was sentenced by this Court to 46 months' imprisonment—the top of the guideline range—followed by three years of supervised release with this Court.

Appeal was taken from the sentence.

## APPEAL DISMISSED

The Court of Appeals determined that oral argument was not necessary. Finding that the sentence imposed was within the guideline range and was not "imposed in violation of law" or "as a result of an incorrect application of the sentencing guidelines," the Seventh Circuit dismissed the appeal for want of jurisdiction. *United States v. Lopez,* 974 F.2d 50, at 52–53 (7th Cir.1992).

## CONCURRING OPINION

In his concurrence to the majority opinion, Judge Wood wrote:

In [*United States v. Schneider,* 910 F.2d 1569 (7th Cir.1990),] the judge [Judge Mills] referred to the defendant as a "flake," but this case I believe goes beyond that. Here the defendant is a Mexican National whom the judge during sentencing referred to as a "turkey." The use of that term could have adverse connotations beyond the use of the term "flake" as applied to describe a citizen of our own. I have no reason to believe that Judge Mills has any ethnic bias whatsoever. I know that outside the record, but others do not, including this defendant. The use of that term as applied to a Mexican National lends itself to an interpretation which might give the unfortunate appearance of possible prejudice and bias against citizens of Mexico. * * * In *Schneider* no fault was found with the content of the slang, but this is a more sensitive situation involving content and connotation.

*Lopez,* at 53–54.

Although Judge Wood states that he knows outside the record that this judge harbors no ethnic bias, this Court nonetheless believes that the tenor of Judge Wood's remarks requires a clarification of the record.

*First,* this Court is unaware of any other case where the question of ethnic bias is raised *sua sponte* on appeal by a member of the appellate panel.

*Second,* Defendant Perez himself did not allege ethnic bias in his appeal.

*Third,* it could not have arisen at oral argument since there was none.

And, *Fourth,* neither of Judge Wood's colleagues on the panel—Judge Easterbrook and Judge Kanne—joined him in such a tortured interpretation.

This Court's reference to the Defendant as a "turkey" was not intended, nor do we believe it could be reasonably construed as, an ethnic slur. *The Random House Dictionary of the English Language* 2037 (2nd ed. 1987), defines "turkey" as: "Slang. *a.* a person or thing of little appeal; dud; loser." (*The American Heritage Dictionary* defines it as a "person regarded as being inept or undesirable." *The American Heritage Dictionary* 1304 (2nd ed. 1982).) Naturally, *Black's Law Dictionary* does not define the word "turkey" at all, since it is slang and not a legal term of art.

This Court will, of course, heed the Seventh Circuit's caution that such terms are to be avoided at sentencing.

## MAJORITY OPINION

A recent Seventh Circuit study decried the decline of civility. *See Final Report of the Committee on Civility of the Seventh Federal Judicial Circuit* (June 1992). Civility is defined as "politeness, especially in a merely formal way." *Webster's New World Dictionary* 257 (3rd ed. 1988). An interim report issued by the Committee on Civility indicated that 50% of the responding judges identified "civility problems in judges' relations with each other." Of that number, 94% identified written opinions as the major source of discord and 83% felt the problem was greatest at the appellate level. *Interim Report of the Committee on Civility of the Seventh Federal Judicial Circuit* at 39 (April 1991).

The *Final Report* proposed standards for professional conduct, including a section captioned "Judges' Duties to Each Other." That section included three proposed standards:

1. We will be courteous, respectful, and civil in opinions....

2. In all written and oral communications, we will abstain from disparaging personal remarks or criticisms, or sarcastic or demeaning comments about another judge.

3. We will endeavor to work with other judges in an effort to foster a spirit of cooperation in our mutual goal of enhancing the administration of justice.

*Final Report of the Committee on Civility of the Seventh Federal Judicial Circuit* at 7A.

Here, the majority opinion—authored by Judge Easterbrook and adopted by Judge Kanne—made reference to various remarks of this Court at sentencing, and the sentencing judge himself, i.e., getting its "dander up," "a harangue about aliens who reenter the United States," a "tirade ... inappropriate in both style and content," "suppress his idiosyncrasies," "unable to contain himself," "lord it over," "intemperate remarks," "inappropriate comments" and "indecorous remarks." *Lopez*, 51–53. Incredibly, the opinion actually compared the sentencing judge to a recidivist criminal.

> Judge Mills expressed disappointment that deported aliens reenter the United States notwithstanding adjurations to keep out. This court expresses parallel disappointment that a member of the bench is unable to contain himself at sentencing, notwithstanding adjurations to do so. E.g., *United States v. Szabo*, 854 F.2d 251, 254 (7th Cir.1988) [ (quoting the district court's comment that although the defendant failed to make his fine and restitution payments, he had money "to go out and drink booze) ]; *United States v. Schneider*, 910 F.2d 1569 (7th Cir.1990) [ (calling the defendant a "flake" in sentencing him for threatening to kill an Illinois circuit judge) ]. Judicial officers unable or un-

willing to respect norms articulated by this court ought not lord it over persons in the dock who have a different kind of recidivism problem.

*Lopez*, at 52.

As already stated, this Court accepts the Seventh Circuit's admonition against the use of slang at sentencing. But the unduly harsh tone of that admonition was unnecessary. The opinion's brutal style does not serve the interests of civility.