14 F.3d 605
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Danny DAVIS, Jr., Defendant-Appellant.
 No. 91-2426.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 18, 1992.*
Resubmitted March 22, 1993.**
Decided March 22, 1993.
 
 Before FAIRCHILD, CUMMINGS and BAUER, Circuit Judges.
 
 ORDER
 
 1
 On August 15, 1989, Danny Davis, Jr., and a neighbor were involved in an altercation during which a shotgun was discharged. A jury convicted Davis of unlawful possession of a firearm by a felon. 18 U.S.C. Sec. 922(g)(1). Because of previous convictions Sec. 924(e) made him subject to imprisonment for not less than fifteen years. The court determined an imprisonment range of thirty years to life, and on June 11, 1991, sentenced Davis to life imprisonment. On appeal, Davis (1) challenges the denial of his pre-trial motion to suppress evidence, (2) raises a Batson challenge to the selection of his jury, and (3) attacks his sentence on various grounds. Davis also raises a series of issues in his reply brief not raised in his opening brief. After original submission of this appeal we appointed counsel to submit an amicus curiae brief on behalf of appellant on the possible retroactive application of an amendment to the commentary to U.S.S.G. Sec. 4B1.2, and called for a response by the United States. Counsel initially appointed for Davis by this court was permitted to withdraw on motion by Davis and counsel. Successor appointed counsel was permitted to withdraw on motion by Davis to proceed pro se. Davis' briefs were filed pro se.
 
 I.
 
 2
 Prior to trial, Davis sought to suppress evidence and certain statements he made to authorities. He argues that he never agreed to let the police search his home, where they found a shotgun with an empty shell in it. He also argues that the police failed to give him his Miranda warnings prior to questioning him on the scene. The district court held a suppression hearing and denied Davis' motion to suppress. The court concluded that Davis (1) was not in custody when he made statements to the police, so that Miranda warnings were unnecessary, (2) freely and voluntarily made statements to the police concerning the disturbance and the gun, and (3) freely and voluntarily consented to a search of his house for the gun. R.Doc. 53.
 
 
 3
 Our review of the transcript of the suppression hearing reveals ample support for the district court's findings. It is true that Davis offered a version of events that conflicts with the district court's conclusions, but the police officers presented another version of events that supported them. Although the district court did not explicitly adopt the officers' version, it must have credited their testimony to arrive at the conclusions it did. See United States v. Mitchell, 951 F.2d 1291, 1299 (D.C.Cir.1991) (it was implicit in district court's ruling that it "resolved the credibility questions in favor of the officers"), cert. denied, 112 S.Ct. 1976 (1992). As long as the district court did not credit "exceedingly improbable testimony," then we are bound by the court's factual findings. United States v. Cardona-Rivera, 904 F.2d 1149, 1152 (7th Cir.1990).
 
 
 4
 The officers testified that, after arriving on the scene, Davis was found on the west side of his house, they patted him down for weapons, and they asked him a few questions. Supp.Tr. at 21-22. Davis did not appear frightened or intimidated. Id. at 26. On the contrary, he was extremely cooperative, admitting involvement in the disturbance, but denying shooting the gun. Id. at 23. As he made these statements, Davis was not handcuffed, the officers displayed no weapons, and he was free to leave. Id. at 22, 24, 43, 47. Asked where the gun was, Davis said that it was on his bed, and he agreed to let the officers get it. Id. at 25-27, 37, 46. When the gun was brought to him, Davis identified it as the one involved in the disturbance. Id. at 27. We cannot say that this testimony is exceedingly improbable, so we must accept it as true. Cardona-Rivera, 904 F.2d at 1252.
 
 
 5
 The version of events recounted above fully supports the district court's three main conclusions. The officers conducted an investigative stop in compliance with Terry v. Ohio, 392 U.S. 1 (1968). Such a stop does not constitute custodial interrogation for the purposes of the Miranda rule. See Berkemer v. McCarty, 468 U.S. 420, 440 (1984). During the brief questioning, Davis was not handcuffed, restrained, or threatened. He was extremely cooperative and did not appear intimidated. This supports the court's conclusions that he freely and voluntarily answered the officers' questions and freely and voluntarily consented to the search of his house. We find no error in the district court's decision not to suppress the shotgun and Davis' statements.
 
 II.
 
 6
 Davis, who is black, argues that blacks were disproportionally underrepresented on both the jury and the jury venire. Liberally construing Davis' briefs, we discern two basic claims: (1) a violation of the Sixth Amendment right to a fair cross-section of the community represented in the jury venire, and (2) purposeful racial discrimination in the selection of the jury and the jury venire in violation of the equal protection component of the Due Process Clause of the Fifth Amendment.[1]
 
 A. The Sixth Amendment Claim
 
 7
 The government correctly points out that there is no constitutional right to have a petit jury that represents a cross-section of the community. Holland v. Illinois, 493 U.S. 474, 480 (1990). But the jury must be drawn from a fair cross-section of the community. Taylor v. Louisiana, 419 U.S. 522, 527 (1975). In order to establish a prima facie violation of this requirement, the defendant must show:
 
 
 8
 (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.
 
 
 9
 Duren v. Missouri, 439 U.S. 357, 364 (1979). Although there is no doubt that blacks are a "distinctive" group in the community, Davis has failed to make the other two showings required by Duren.
 
 
 10
 There is no evidence in the record concerning the racial composition of the area from which jurors are drawn nor of the jury venire.
 
 
 11
 Davis has also failed to show that any underrepresentation of blacks, assuming it occurred, was due to their systematic exclusion in the jury selection process. In response to a motion by Davis to explain its jury selection process, the government tendered the "Plan for the Random Selection of Jurors" adopted by the Central District of Illinois. R.Doc. 97. The Plan explained that potential jurors are to be drawn by lot from voter registration lists supplemented by lists of licensed drivers. Plans similar to this have been upheld by this court. United States v. Guy, 924 F.2d 702, 707 (7th Cir.1991).
 
 
 12
 Davis has failed to show that the venire from which his jury was drawn did not represent a fair cross-section of the community. Therefore, we reject Davis' Sixth Amendment claim.
 
 B. The Equal Protection Claim
 
 13
 Davis also argues that blacks were systematically excluded from his jury contrary to the teachings of Batson v. Kentucky, 476 U.S. 79 (1986). Like Davis' fair-cross-section claim, this claim is unsupported by the record. As noted previously, there is no indication in the record of the racial composition of the jury or the venire from which it was drawn. Nor is there any indication of the race of jurors the prosecution peremptorily challenged. Davis has therefore failed to make a prima facie case of purposeful racial discrimination. See Batson, 476 U.S. at 96 ("[T]he defendant must first show that he is a member of a cognizable racial group ... and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race.").
 
 III.
 
 14
 Davis challenges his sentence on four grounds: (1) the government failed to meet its burden concerning the prior convictions used to enhance his sentence; (2) the altercation did not occur as stated in the presentence report; (3) the enhancement for obstruction of justice punished him for refusing to admit guilt at the suppression hearing; and (4) the judge improperly took into account subjective factors in sentencing him.[2]
 
 A. Prior Convictions
 
 15
 Davis argues that the government failed to meet its burden concerning the prior convictions used to enhance his sentence under the Armed Career Criminal Act, 18 U.S.C. Sec. 924(e), and the sentencing guidelines. At trial, the government presented certified copies of four prior felony convictions. See Govt's Exhibits 2-4 & 7. As the government notes, once it has shown that a defendant has a prior conviction, the burden rests with the defendant to demonstrate that the conviction was invalid. United States v. Psi, 931 F.2d 1201, 1204 (7th Cir.), cert. denied, 112 S.Ct. 209 (1991); United States v. Psi, 907 F.2d 639, 643 (7th Cir.1990), cert. denied, 111 S.Ct. 1110 (1991). Davis fails to demonstrate in his arguments before this court how his convictions were invalid or were inappropriate for enhancement of sentence. Inadequately developed arguments such as this are waived. United States v. Pr, 927 F.2d 1376, 1384 (7th Cir.), cert. denied, 112 S.Ct. 141 (1991).
 
 B. The Presentence Report
 
 16
 Davis challenges the description of the altercation in the presentence report. Davis claimed that he never possessed the shotgun. The district court overruled Davis' objection, stating "[t]he Court finds that the jury found beyond a reasonable doubt that Mr. Davis possessed the shotgun." Tr. at 6. In light of the evidence presented at trial indicating that Davis did possess the shotgun, Trial Tr. at 153, 181, 183, 210-14, the district court's decision was not clearly erroneous. United States v. Psi, 876 F.2d 1264, 1271 (7th Cir.1989).
 
 C. Obstruction of Justice
 
 17
 Davis offered testimony at the suppression hearing that, if believed, could have led to the suppression of the evidence and his statements. Sent.Tr. at 8. The district court rejected Davis' version of events and found him eligible for a two-point enhancement of his base offense level under Sec. 3C1.1. This finding was not clearly erroneous. United States v. Delgado, 936 F.2d 303, 306 (7th Cir.1991), cert. denied, 112 S.Ct. 972 (1992). Davis argues that the enhancement under Sec. 3C1.1 penalizes him for exercising his constitutional right to refuse to admit guilt. Defendant's Br. at 18. This argument is without merit. United States v. Barnett, 939 F.2d 405, 408 (7th Cir.1991).
 
 
 18
 D. Impermissible Considerations in Sentencing
 
 
 19
 After determining that the applicable guideline range was 360 months to life imprisonment, the district judge elicited recommendations from both the government's attorney and Davis, who had chosen to represent himself, concerning the appropriate sentence he should impose. The government recommended 360 months. Sent.Tr. at 31. Davis requested a sentence of sixty months. Id. at 38. The district judge then spoke before imposing sentence. After recounting Davis' extensive criminal history, he made the following statement:
 
 
 20
 You [Mr. Davis] spent almost half your life either in the penitentiary, or behind bars, or on parole. Ye gods. What's going to happen here is we're going to have to warehouse you. That's all. You're just a rat in society. You're running loose. That can't be tolerated.
 
 
 21
 Id. at 45. The judge sentenced Davis to life imprisonment. Id. at 46. Davis challenges the sentence on the ground that the comments were based on the judge's "personal, subjective view of" Davis, and "fell well outside the bounds of the [court's] obligation as an impartial trier of fact and law."
 
 
 22
 We do not condone Judge Mills' inappropriate language. We have in the past been critical of his remarks to defendants, characterizing them as "regrettable," United States v. Schneider, 910 F.2d 1569, 1571 (7th Cir.1990), and as "intemperate," United States v. Lopez, 974 F.2d 50, 52 (7th Cir.1992).
 
 
 23
 Nevertheless, as pointed out in Lopez, "appellate jurisdiction depends on a conclusion that the sentence was 'imposed in violation of law' or 'as a result of an incorrect application of the sentencing guidelines.' " Lopez, 974 F.2d at 52-53 (citations omitted). We do not view the judge's use of this inappropriate language as a denial of due process. See Lopez, 974 F.2d at 54 (Wood, J. concurring). We have no jurisdiction to disturb the sentence on the basis of this language used by the judge.
 
 IV.
 
 24
 By order dated April 22, 1992, we permitted Davis to argue issues not raised in his opening brief: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; (3) sufficiency of the indictment; and (4) jury bias. Davis then filed a document entitled "Proferred Justification Belated Claim of Ineffective Assistance of Trial Counsel, Under the Cause and Prejudice Standard. And in the Interest of Justice." In this document, he set forth approximately 20 claims of ineffective assistance of counsel. After considering each of these claims and the supporting arguments in Davis' reply brief, we conclude that Davis' claims are, for a variety of reasons, without merit. Davis also included in his "Proferred Justification" discussions of the legal standards regarding prosecutorial misconduct, sufficiency of an indictment, and jury bias. However, he failed to point to facts in the record in support of these allegations. They are therefore waived. United States v. Williams, 877 F.2d 516, 518-19 (7th Cir.), cert. denied, 493 U.S. 863 (1989).
 
 V.
 
 25
 On the date Davis was sentenced U.S.S.G. Sec. 4B1.4, "Armed Career Criminal," was in effect and applied to a defendant who was subject to an enhanced sentence under the provisions of 18 U.S.C. Sec. 924(e), as Davis was. Section 4B1.4 had been added by Amendment 355, effective November 1, 1990, after the date of Davis' offense. A sentencing court is to apply the guidelines in effect at the time of sentencing (assuming no ex post facto concerns). 18 U.S.C. Sec. 3553(a)(4); United States v. Lykes, 999 F.2d 1144, 1147 (7th Cir.1993).
 
 
 26
 Whether Davis' sentence was within a range correctly determined by applying Sec. 4B1.4, however, depends (among other factors) on whether his offense level was that of a career offender under Sec. 4B1.1 (which was in effect both on the date of his offense and the date he was sentenced).
 
 
 27
 Davis was a career offender under Sec. 4B1.1 only if his instant offense of conviction was a crime of violence as defined in Sec. 4B1.2. The term, "crime of violence," is defined as
 
 
 28
 any offense under federal or state law punishable by imprisonment for a term exceeding one year that--
 
 
 29
 (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
 
 
 30
 (ii) ... involves conduct that presents a serious potential risk of physical injury to another.
 
 
 31
 This court has previously interpreted the definition "as including as crimes of violence those felon-in-possession offenses which involve the use or threatened use of force." Lykes, 999 F.2d at 1146, and cases there cited. Here the judge found the threatening conduct.
 
 
 32
 After the date Davis was sentenced the Sentencing Commission issued Amendment 433, effective November 1, 1991, changing the commentary to Sec. 4B1.2 so as to provide, in part, that "[t]he term 'crime of violence' does not include the offense of unlawful possession of a firearm by a felon." U.S.S.G. App. C, Amendment 433 (1991). The Amendment also inserted in previously existing commentary "(i.e., expressly charged)" so that the reference in commentary to conduct presenting a serious risk of physical injury now reads "the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted...." Section 4B1.2, Appl. Note 2.
 
 
 33
 The Amendment came to our attention at our initial consideration of this appeal, and because of our concern with the severity of the life sentence and the possibility that the Amendment might be retroactively applied to Davis' sentence, we appointed an amicus curiae and asked for briefing on possible application of the Amendment to Davis' sentence. Davis had not argued the point.
 
 
 34
 After supplemental briefing, the Supreme Court decided Stinson v. United States, 113 S.Ct. 1913 (1993). The Court addressed Amendment 433 and held that "the commentary is a binding interpretation of the phrase 'crime of violence.' Federal courts may not use the felon-in-possession offense as the predicate crime of violence for purposes of imposing the career offender provision of USSG Sec. 4B1.1 as to those defendants to whom Amendment 433 applies." Id. at 1920. The Court did not decide whether a sentence imposed before the Amendment may be reversed on appeal, but left "the contentions of the parties on this aspect of the case to be addressed by the Court of Appeals on remand." Id.
 
 
 35
 In our circuit, application of an amendment to a sentence imposed before the amendment depends on whether the amendment clarifies, but does not substantively change, the applicable guideline. United States v. Tai, 994 F.2d 1204, 1212-1213 (7th Cir.1993); United States v. Thompson, 944 F.2d 1331, 1347 (7th Cir.1991), cert. denied, 112 S.Ct. 1177 (1992), and cases therein cited.
 
 
 36
 The Commission referred to the Amendment as clarifying. This court however, after Stinson, decided that Amendment 433 "was not merely clarifying, but rather it substantively changed the law." Lykes, 999 F.2d at 1150. Thus we are foreclosed from applying Amendment 433 to reverse Davis' pre-amendment sentence.
 
 
 37
 Although the government has argued here that the Amendment does not permit us to reverse and remand so that Davis can be resentenced, we note that it does assert that the Amendment can have some effect on persons sentenced earlier.
 
 
 38
 As stated in the supplemental brief filed by the government:
 
 
 39
 1. The Sentencing Reform Act of 1984 requires the defendant to file a motion in the district court seeking the retroactive application of a sentencing range that has been subsequently lowered by the guidelines. 18 U.S.C. Sec. 3582(c)(2).
 
 
 40
 2. The Sentencing Commission clearly intended that Amendments 433 and 461 should be considered by the district court by including those amendments in the Sec. 1B1.10(d), p.s. [policy statement] list of amendments that may be applied retroactively.
 
 
 41
 Br. at 18-19.
 
 
 42
 Amendment 461, referred to in the government brief, became effective November 1, 1992. Among other provisions, Amendment 461 ratified Amendment 433. The government appears to have argued before the Supreme Court that petitioner's only recourse is to file a motion in district court for resentencing. Stinson, 113 S.Ct. at 1920.
 
 VI.
 
 43
 The judgment is AFFIRMED, without prejudice to a motion in district court pursuant to 18 U.S.C. Sec. 3582(c)(2).
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 **
 After appointment of counsel to submit an amicus curiae brief on behalf of appellant, and receipt of supplemental briefs dealing with the issue of whether amendment to a commentary of the sentencing guidelines should be applied retroactively to this case
 
 
 [1]
 Davis couches his argument in terms of the Equal Protection Clause of the Fourteenth Amendment, which of course applies only to the States. However, the same analysis applies under the equal protection component of the Due Process Clause of the Fifth Amendment. United States v. Hughes, 970 F.2d 227, 230 (7th Cir.1992)
 
 
 [2]
 Davis also argues in his reply brief that the sentencing judge failed to abide by Fed.R.Crim.P. 32(c)(3)(D), which requires written findings on controverted matters in the presentence investigation report. We reject this argument for several reasons. First, it was raised for the first time in Davis' reply brief, so it is waived. Wilson v. O'Leary, 895 F.2d 378, 384 (7th Cir.1990). Second, we note that there is an addendum to the presentence report that contains the court's findings by reference to the probation officer's or government's position on each of the disputed matters. Thus, even if it were prudent to consider Davis' argument at this point, it appears that the district court satisfied the requirements of Rule 32(c)(3)(D)