772 A.2d 273

**Valentino Maurice JACKSON**

v.

**STATE of Maryland.**

**No. 96, Sept. Term, 2000.**

Court of Appeals of Maryland.

May 11, 2001.

Nancy S. Forster, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief) Baltimore, for petitioner.

Steven L. Holcomb, Jr., Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., of Maryland, on brief) Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

CATHELL, Judge.

This case calls into question the appropriateness of comments made by a trial judge during the sentencing phase of a criminal proceeding. On May 5, 1999, following a jury trial in the Circuit Court for Howard County, Valentino Maurice Jackson, petitioner, was convicted of first degree assault, second degree assault, reckless endangerment, and unlawful

possession of a short-barreled shotgun. On August 16, 1999, the trial judge imposed a total sentence of eighteen years in the Division of Corrections. In an unreported opinion, the Court of Special Appeals affirmed the judgment.[1] Pursuant to Maryland Rule 8–303, petitioner presented one issue for which we granted certiorari:

> Did the trial court's comments at sentencing that people moved to Howard County to get away from people like Petitioner, who come to Howard County from Baltimore City and act like they are animals living in the jungle, exceed the outer limit of the judge's broad discretion in sentencing and amount to impermissible sentencing criteria?[2]

We answer petitioner's question in the affirmative. We hold that the trial court's comments at sentencing exceeded the outer limit of a judge's broad discretion in sentencing and therefore amounted to the application of impermissible sentencing criteria. Accordingly, we reverse the decision of the Court of Special Appeals and remand the case to that court with instructions to vacate the sentence of the Circuit Court for Howard County and to remand the case to that court for resentencing before a different judge.

## Facts

The victim of the assault in the underlying case is named Mitchell Woods (Woods). He is a self-confessed drug dealer who both resides and conducts his illicit business in Howard

---

1. The Court of Special Appeals also addressed whether the sentencing court erred in imposing separate sentences for reckless endangerment and second degree assault, offenses that merge into a conviction for first degree assault. That court held that the sentencing court did err and that a sentence should have been imposed only on the first degree assault conviction. As a result, the convictions for reckless endangerment and second degree assault were vacated.

2. We denied two other petitions for writ of certiorari relating to the case *sub judice:* (1) the *pro se* petition filed by Valentino Maurice Jackson; and (2) the conditional cross petition filed by the State. We will therefore only address the issue presented to us by the Appellate Division of the Public Defender's Office.

County. Apparently, petitioner or members of his family were among Woods's customers. Woods testified that at approximately 1:00 a.m. on July 12, 1998, petitioner came to Wood's townhouse at 5593 Cedar Lane in Columbia, Maryland[3] to purchase cocaine. Woods refused to sell petitioner any drugs because he alleged that petitioner owed him money, apparently from previous drug sales. Petitioner became angry, and a brief verbal altercation took place between the two men after which petitioner left Wood's townhouse.

According to Woods' testimony, approximately two hours later, at 3:30 a.m., he and his friend, Corey Drain, were standing in the parking area in front of his townhouse when petitioner drove up in an automobile and called out Wood's name. Petitioner then exited the vehicle and confronted Woods with a short-barreled shotgun. When petitioner pointed the shotgun at him, Woods stopped walking towards the car and tried to convince petitioner to put the shotgun down by telling him that there were police in the area. Woods further testified that at this time, the police came upon the incident and arrested petitioner.

Officer Daniel Boehler of the Howard County Police Department testified that he was in the area responding to a domestic call when he noticed petitioner standing in the parking lot pointing a shotgun at Woods. The officer drew his weapon on petitioner and ordered him to place the weapon on the ground, back away from it, and keep his hands where the officer could see them. Petitioner followed the officer's orders and was subsequently arrested. The shotgun was confiscated and upon inspection was found to have been loaded with two rounds.

On May 5, 1999, following a jury trial in the Circuit Court for Howard County, petitioner was convicted of first degree assault, second degree assault, reckless endangerment, and unlawful possession of a short-barreled shotgun. On August

---

3. At the time of trial, Mr. Woods was serving a one-year sentence for CDS possession with intent to distribute in the Howard County Detention Center.

16, 1999, the trial judge imposed a total sentence of eighteen years imprisonment.[4] In imposing sentence, the judge stated:

THE COURT: Well, this case was very well prepared and very well presented by both sides. Mr. Tauber did his very best. Convinced the jury that Mr. Jackson was not carrying a weapon openly with intent to injure. He was found not guilty of that charge. He was found guilty of first degree assault, second degree assault, reckless endangerment and possessing an unlawful short-barreled shotgun. And I agree that Mr. Woods is no bargain. *Now, unfortunately, a number of communities in the lovely city of Columbia have attracted a large number of rotten apples. Unfortunately, most of them came from the city.*[5] *And they live and act like they're living in a ghetto somewhere. And [t] hey weren't invited out here to [behave] like animals.* Drugs and guns and drugs and guns. It's nonsensical. Other people don't want that. Other people don't tolerate that. And the problem here, of course, is that although Mr. Jackson has a drug problem, none of these people talk about drug problems. This is the great Valentino Jackson. So he's great part of the day and he's goofy the other part of the day. With guns and drugs. So he turns it on and turns it off at will. And it's admirable that he's able to deal effectively with his superiors in the military as well as the civilian employees at Toby's Dinner Theater. But roaming around the streets at 3:30 in the morning, going to a WaWa, uh, *going to somebody—going out of the way to go to somebody else's house and confront people with sawed-off shotguns is what they do in the city. That's why people moved out here. To get away from people like Mr. Jackson. Not to associate with them and have them follow*

---

**4.** The sentencing judge imposed separate concurrent sentences for each count: eighteen years for first degree assault; eight years for second degree assault; three years for reckless endangerment; and three years for possession of a short-barreled shotgun. The Court of Special Appeals vacated the sentences for reckless endangerment and second degree assault. *See, supra,* footnote 1.

**5.** Apparently, "the city" is referring to Baltimore City.

*them out here and act like this was a jungle of some kind.
So. It's not. And our only chance to preserve it is to
protect it.* The other thing that's discouraging, of course, is
that Mr. Jackson was placed on supervised probation on two
previous occasions and he not only didn't do well on proba-
tion, he failed miserably. And the reason he failed miser-
ably was because he made no effort while under supervision
to take advantage of the opportunity to address the very
problems that he was well aware of. So it's simply a
question of warehousing him, to tell you the truth. All
right. Do you have anything further to say, Mr. Jackson?
I'll give you a chance now that you've had an opportunity to
recover.

THE DEFENDANT: Yes. Your Honor, I was never
trying to hurt anyone. But my families was, uh, my family
was attacked and all I was trying to do was help and do
something. To stop it from going to where it went. And
now my brother's away recovering, thank God. Like you
said, (unintelligible) for a year. And I'm the one looking at
the time. I was the middle person. (Unintelligible) I
mean—

THE COURT: Well, you worked hard to be a bad person
and you accomplished it. *Civilized people are not on the
roads at 3:30 in the morning, confronting other people with
sawed-off shotguns. Civilized people don't own sawed-off
shotguns.* Only criminals. Only criminals looking for no
good, that's why a sawed-off shotgun. So, I mean, what can
I say? [Emphasis added.]

In an unreported opinion, the Court of Special Appeals af-
firmed petitioner's sentence for first degree assault and pos-
session of a short-barreled shotgun. That court concluded:

We have reviewed the entire transcript of the sentencing
hearing and find no indication, from the remarks made by
the sentencing court or from any information supplied by
counsel, that the court was under the impression that
appellant [now petitioner] was not from Howard County.
As the excerpt we have quoted reveals,[6] the court made

---

6. The excerpt the Court of Special Appeals quoted is substantially the
same excerpt that we have quoted *supra* in the case *sub judice.*

general comments about people moving to Columbia from other places, many from Baltimore City, and about how some of those people brought with them a culture of drugs and guns that has harmed the communities to which they have moved. Those comments were not directed to the "otherness" or outsider status of the people moving into Columbia from Baltimore City or elsewhere. Rather, they were a commentary about how many of the problems most often associated with the poorest urban areas of Baltimore City are now cropping up in suburban towns like Columbia. The court did not appear concerned about where appellant [now petitioner] had come from—or whether he was an outsider to Howard County at all. It seemed concerned about the nature of the conduct in which he had been engaging, and his recalcitrance to changing his behavior. Those were not impermissible considerations for the court to make during sentencing.

We granted certiorari to address whether the trial court's comments at sentencing exceed the outer limit of the judge's broad discretion in sentencing and amount to impermissible sentencing criteria.

### Discussion

█ █ It is well settled that "[a] judge is vested with very broad discretion in sentencing criminal defendants." *Poe v. State,* 341 Md. 523, 531, 671 A.2d 501, 505 (1996); *Gary v. State,* 341 Md. 513, 516, 671 A.2d 495, 496 (1996); *Jennings v. State,* 339 Md. 675, 683, 664 A.2d 903, 907 (1995); *Jones v. State,* 336 Md. 255, 265, 647 A.2d 1204, 1209 (1994); *Logan v. State,* 289 Md. 460, 480, 425 A.2d 632, 642 (1981). However, "[a] judge should fashion a sentence based upon the facts and circumstances of the crime committed and the background of the defendant, including his or her reputation, prior offenses, health, habits, mental and moral propensities, and social background." *Poe,* 341 Md. at 532, 671 A.2d at 505 (internal citation omitted). "The judge is accorded this broad latitude to best accomplish the objectives of sentencing—punishment, deterrence and rehabilitation." *State v. Dopkowski,* 325 Md.

671, 679, 602 A.2d 1185, 1189 (1992), citing *Johnson v. State*, 274 Md. 536, 540, 336 A.2d 113, 115 (1975). It is also well settled that "[o]nly three grounds for appellate review of sentences are recognized in this [S]tate: (1) whether the sentence constitutes cruel and unusual punishment or violates other constitutional requirements; (2) *whether the sentencing judge was motivated by ill-will, prejudice or other impermissible considerations;* and (3) whether the sentence is within statutory limits." *Gary,* 341 Md. at 516, 671 A.2d at 496 (emphasis added), citing *Teasley v. State,* 298 Md. 364, 370, 470 A.2d 337, 340 (1984); *see Reid v. State,* 302 Md. 811, 820, 490 A.2d 1289, 1294 (1985). The first and third grounds are not applicable to the facts and circumstances of the case at bar; however, the issue before us involves the second ground—whether the sentencing judge was motivated by ill-will, prejudice or other impermissible considerations.

In *United States v. Diamond,* 561 F.2d 557 (4th Cir.1977), the United States Court of Appeals for the Fourth Circuit considered comments made by a sentencing judge that are similar to the comments made by the sentencing judge in the case at bar. In that case, two defendants, originally from New York, were convicted of theft of an interstate shipment of goods in Virginia. In sentencing, the trial judge said:

I don't know that—I suppose you have a constitutional right to commit a crime wherever you want to commit it. But the Court takes a dim view of people coming down from New York to commit their crimes in Virginia.

Now, I suppose that that is grounds for appeal, but I will state it right for the record. If they want to live and have their being in the State of New York, then let them have their source of a livelihood in the State of New York. If that livelihood is crime, then commit it up there. . . .

*Id.* at 559. That appellate court affirmed the convictions but vacated the sentences. In its holding the court said:

From our examination of the record, we are persuaded that the district judge exhibited no bias during defendants' jury trial, but we conclude that the quoted comments ine-

luctably reflect bias in sentencing. The inference that the district judge considered as a factor in sentencing the fact that defendants who committed a crime within the district in which he presided were nonresidents is inescapable. We cannot permit a district judge who is an officer of a national judicial system and who is enforcing a national criminal code to be moved by such considerations of parochialism in imposing sentences. We therefore vacate the sentences and remand the cases with directions that defendants be resentenced before a different district judge of the district.

*Id.*

 Similarly, the sentencing judge in the case *sub judice*, gave the impression that he based his sentence, at least in part, on something beyond the facts and circumstances of the crime and the background of petitioner—specifically, that the sentencing judge based his sentence, at least in part, on a belief that petitioner was from Baltimore City. This is clearly an improper factor to base sentencing upon and gives the impression that the sentence imposed on petitioner by this judge may have been more severe based on the judge's belief that petitioner was from Baltimore City.[7] Simply stated, it is not permissible to base the severity of sentencing on where people live, have lived, or where they were raised.

 Additionally, the fact that the sentencing judge, who is Caucasian, uses words such as "ghetto," "jungle," "animals," and "people like Mr. Jackson" who come "from the city" in describing an African–American defendant, has called into question, whether his comments might also have constituted racial bias, or the appearance of racial bias. In his brief, petitioner states:

---

7. The evidence presented in the record and in petitioner's pre-sentence report indicates that petitioner was born in the borough of Brooklyn in New York City. He had lived in the Columbia in Howard County for the past thirteen years, since he was approximately nineteen years of age. We have no indication why the sentencing judge believed, if he did, that petitioner had been a resident of Baltimore City.

Imagine that you are an African–American.... You are standing before a judge, a Caucasian gentleman, who is about to sentence you for your crimes. Before imposing a sentence of eighteen years' imprisonment, the judge addresses you as follows: [There follows relevant portions of the trial judge's comments we have before mentioned.] Undoubtedly, you, as would any reasonable person, would conclude from these comments that the sentence imposed was based, to some degree, on racial prejudice. And, even if the statements do not reflect *actual* racial prejudice on the part of the sentencer, the highly charged words used here plainly give an *appearance* of such prejudice....

While we cannot determine on the basis of this record whether the sentencing judge's comments were actually based on race, and thus whether petitioner was also improperly sentenced by the sentencing judge in part because of his being an African–American, we recognize that the language used by the sentencing judge when sentencing petitioner could lead a reasonable person to draw such an inference. The constitutional guarantee of due process of law forbids a court from imposing a sentence based in any part on inappropriate considerations, including improper considerations relating to race. As we discussed, *supra*, although we cannot determine whether the sentencing judge's comments were actually based on race, the sentencing judge clearly was not alert to avoid comments that may be so perceived.

We have previously had the opportunity to consider improper appeals to racial prejudice, albeit by a prosecutor. In *Contee v. State*, 223 Md. 575, 165 A.2d 889 (1960), an African–American male was being tried for the rape of a Caucasian woman. The prosecutor made repeated remarks designed to emphasize the racial distinctions between the victim and the accused. We noted that a "[trial] court should not countenance or permit unwarranted and improper appeals to racial prejudice to be made or go unnoticed." *Id.* at 583, 165 A.2d at 894. While we note that the racial overtones of the prosecutor's remarks in *Contee* were blatant when compared to the

statements of the sentencing judge in the case *sub judice,* the potential for a racially biased result remains the same.

Other jurisdictions are in accord with our holdings that matters of race and matters of a defendant's place of residence or origins are inappropriate sentencing considerations. In *United States v. Leung,* 40 F.3d 577 (2d Cir.1994), when sentencing a woman of Chinese descent for conspiracy to possess and distribute a controlled dangerous substance the judge said:

We have enough home-grown criminals in the United States without importing them. . . .

The purpose of my sentence here is to punish the defendant and to generally deter others, particularly others in the Asiatic community because this case received a certain amount of publicity in the Asiatic community, and I want the word to go out from this courtroom that we don't permit dealing in heroin and it is against [precedent] law, it is against the customs of the United States, and if people want to come to the United States they had better abide by our laws. That's the reason for the sentence, punishment and general deterrence.

*Id.* at 585. In vacating Leung's sentence, that appellate court concluded that:

In this case, we are confident that the able and experienced trial judge in fact harbored no bias against Leung because of her ethnic origin, her alien status, or any other categorical factor. Nevertheless, since " 'justice must satisfy the appearance of justice,' " even the appearance that the sentence reflects a defendant's race or nationality will ordinarily require a remand for sentencing. We think that there is a sufficient risk that a reasonable observer, hearing or reading the quoted remarks, might infer, however incorrectly, that Leung's ethnicity and alien status played a role in determining her sentence.

*Id.* at 586–87 (internal citations omitted); *see United States v. Edwardo–Franco,* 885 F.2d 1002, 1005 (2d Cir.1989) (sentencing judge's comments concerning defendant's nationality as a

Columbian "infected the judicial process"); *United States v. McKendrick,* 481 F.2d 152, 156 (2d Cir.1973) (prosecutor's remarks concerning "the colored race" introduced racial prejudice into the trial and violated defendant's right to due process of law); *United States v. Lopez,* 974 F.2d 50, 52 (7th Cir.1992) (holding that a judge informing a defendant of Mexican descent during sentencing that after he served his prison term and was inevitably deported that he should stay out of the judge's jurisdiction "was inappropriate in style and content"); *United States v. Gomez,* 797 F.2d 417, 419 (7th Cir.1986) (holding that although there was no sentencing error in this case, the court noted that sentencing a defendant more harshly because of his nationality "obviously would be unconstitutional"); *United States v. Vue,* 13 F.3d 1206, 1213 (8th Cir. 1994) (holding that the making of prosecutorial arguments associating members of a particular ethnicity and from a particular geographic region with the commission of drug related offenses violated the defendant's constitutional rights); *United States v. Borrero–Isaza,* 887 F.2d 1349, 1355 (9th Cir.1989) (holding that the judge's comments during sentencing for a drug possession and distribution conviction that defendant was from the drug source country of Columbia and that the judge intended to send a message to source countries led the court to vacate the sentence and order a re-sentencing because it believed that the defendant "was penalized because of his national origin, and not because he trafficked in drugs that emanated from a source country"); *Fontanello v. United States,* 19 F.2d 921, 921 (9th Cir.1927) (prosecutor's comments during closing argument that: "These men are Italians. We welcome them to our country. They should obey our laws. It is a matter of everyday knowledge that the majority of people in King county running stills are of the same nationality; that whenever we have a still case in this court in a great many cases we find the last name similar to these: Fontanello, Rocco, and Pinola." constituted prejudicial error, which required reversal); *United States v. Doe,* 903 F.2d 16, 24–25 (D.C.Cir.1990) (holding that evidence presented by prosecutors that the drug trade in Washington, D.C., was being

controlled by people of Jamaican descent, like the defendants, was an improper appeal to racial prejudices); *People v. Wardell,* 230 Ill.App.3d 1093, 1103, 172 Ill.Dec. 478, 595 N.E.2d 1148, 1155 (1992) ("As the judge at trial must shield the jury from considering racially prejudicial remarks by the participants during trial, so also must the judge at sentencing safeguard against racial considerations."); *Martinez v. State,* 114 Nev. 735, 738, 961 P.2d 143, 145 (1998) ("A trial judge may not ... consider a defendant's nationality or ethnicity in its sentencing determination....").

The United States Supreme Court and federal courts of appeals have emphasized repeatedly that not only must justice be done, it also must appear to be done. In the oft-quoted statement of Justice Frankfurter, "justice must satisfy the appearance of justice." *Offutt v. United States,* 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954); *see also Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 864, 108 S.Ct. 2194, 2205, 100 L.Ed.2d 855 (1988); *Marshall v. Jerrico, Inc.,* 446 U.S. 238, 242–43, 100 S.Ct. 1610, 1613, 64 L.Ed.2d 182 (1980); *Mayberry v. Pennsylvania,* 400 U.S. 455, 465, 91 S.Ct. 499, 504–05, 27 L.Ed.2d 532 (1971); *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955); *United States v. Diaz,* 797 F.2d 99, 100 (2d Cir.1986), *cert. denied,* 488 U.S. 818, 109 S.Ct. 57, 102 L.Ed.2d 35 (1988). These same Courts have adhered steadfastly to the proposition that race and nationality should play no role in the administration of justice. *See, e.g., Rose v. Clark,* 478 U.S. 570, 587, 106 S.Ct. 3101, 3111, 92 L.Ed.2d 460 (1986) (Stevens, J., concurring); *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Turner v. Murray,* 476 U.S. 28, 35–38, 106 S.Ct. 1683, 1687–89, 90 L.Ed.2d 27 (1986); *Roman v. Abrams,* 822 F.2d 214, 227–28 (2d Cir.1987), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1311, 103 L.Ed.2d 580 (1989). Nor should the fact of where a criminal defendant lives, or has lived, play *any* role in the sentencing of a defendant.

In its brief to this Court, the State relies heavily on *Poe v. State,* 341 Md. 523, 671 A.2d 501 (1996), a case in which we held that a judge's comments concerning his religious and

philosophical beliefs did not demonstrate that the sentencing judge was motivated by ill-will or prejudice. In *Poe*, before announcing the sentence to be imposed, the trial judge remarked:

> "That's what irritates me today with this liberal philosophy. I guess I'm a dinosaur. I'm still old-fashioned. Maybe my time is gone, maybe. I still believe in good old-fashioned law and order, the Bible, and a lot of things that people say I shouldn't believe anymore. Perhaps I am a dinosaur sitting here, but I'm not going to change. Maybe one day they will say you should not sit here any more because you are too much of a dinosaur. You are too conservative in criminal law. You believe too much in the Bible and law and order."

*Id.* at 533, 671 A.2d at 505–06. In our holding, we commented that while we did not express approval of the remarks made by the sentencing judge, we nonetheless found that the sentence imposed on Poe was not motivated by ill-will, prejudice, or other impermissible considerations. *Id.* at 534, 671 A.2d at 506. *Poe*, however, is distinguishable from the case at bar. In *Poe*, the sentencing judge's comments concerned *his* personal beliefs as to a general philosophy—his comments were not directed at any particular type of person, or directed at any geographical consideration, or at the defendant in that case. This is a far different situation than the one presented in the case at bar.

As we have indicated, *supra*, we cannot determine whether the sentencing judge was motivated by ill-will or prejudice based upon his belief that petitioner was "from the city" or because he was an African–American, or both, or neither. We shall assume that he was not motivated by prejudice towards African–Americans. Either consideration, however, is impermissible. "A defendant in a criminal case has a right to a fair trial. It is well settled in Maryland that fundamental to a defendant's right to a fair trial is an impartial and disinterested judge." *Jefferson–El v. State*, 330 Md. 99, 105, 622 A.2d 737, 740 (1993) (internal citations omitted). This fundamental right of fairness extends to the sentencing

phase of a trial. Furthermore, a defendant "has a right to a trial in which the judge is not only impartial and disinterested, but who also has the appearance of being impartial and disinterested." *Chapman v. State,* 115 Md.App. 626, 631, 694 A.2d 480, 482 (1997). "[O]ur system of law has always endeavored to prevent even the *probability* of unfairness." *Crawford v. State,* 285 Md. 431, 452, 404 A.2d 244, 254 (1979), quoting *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). As the United States Supreme Court recognized in *Young v. United States,* 481 U.S. 787, 811, 107 S.Ct. 2124, 2140, 95 L.Ed.2d 740 (1987), "what is at stake is the public perception of the integrity of our criminal justice system." The sentencing judge's comments during petitioner's sentencing phase calls the fairness of the sentence into question. Again, we note, it is not that we can affirmatively say that the sentencing judge was motivated by impermissible considerations reflecting ill-will or prejudice, but it is a fact that his comments might lead a reasonable person to infer that he might have been motivated by ill-will or prejudice, especially as it relates to persons from "the city." "If a judge's comments during sentencing could cause a reasonable person to question the impartiality of the judge, then the defendant has been deprived of due process and the judge has abused his or her discretion." *State v. Pattno,* 254 Neb. 733, 743, 579 N.W.2d 503, 509 (1998).

As the United States Court of Appeals for the Seventh Circuit has noted:

Sentencing is an occasion for decorous and solemn reflection. A judge imposing sentence represents the sovereignty of the United States [or individual State]. Although he may impress the defendant with the gravity of the criminal law and the seriousness of the offense, he should make every effort to suppress his idiosyncrasies. *It is the Rule of Law, the court as custodian of governmental power, and not the judge-as-citizen, that speaks from the bench.* A judge is transient but the court must speak for an enduring polity. No judge can eliminate the "I" in sentencing, but each must

try. Although the judge has a duty station, he acts for the Nation [or State]. . . .

*Lopez,* 974 F.2d at 52 (emphasis added). At best, the comments of the trial court during sentencing of petitioner give the appearance of bias towards persons who are raised in an urban environment—at worst, the comments demonstrate actual prejudice in the sentencing process towards residents of cities or, even still worse, towards persons based upon their racial background. In final analysis, all such considerations are, of course, wrong.

### Conclusion

We hold that the trial court's comments at sentencing exceeded the outer limit of a judge's broad discretion in sentencing and therefore amounted to impermissible sentencing criteria. The sentencing judge gave the impression that he based petitioner's sentence, at least in part, on the improper presumption that petitioner was from Baltimore City, or from a city, rather than Howard County. In other words, he considered petitioner's origins in formulating the sentence. This would clearly be an improper factor upon which to base a defendant's sentence and gives, at least, an inference of a lack of impartiality. Additionally, his statements could give rise to an inference that race was inappropriately considered at sentencing. Accordingly, we reverse the decision of the Court of Special Appeals in respect to the sentences it did not vacate and remand the case to that court with instructions to vacate the remaining sentences of the Circuit Court for Howard County and to remand the case to that court for re-sentencing before a different judge.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IN REFERENCE TO THE REMAINING SENTENCES IS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE SENTENCES OF THE CIRCUIT COURT FOR HOWARD COUNTY AND TO REMAND THIS CASE TO THAT COURT FOR RE–SENTENCING BEFORE A DIFFERENT JUDGE;**

COSTS TO BE PAID IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS BY HOWARD COUNTY.