43 A.3d 383

**Muhammad H. ABDUL–MALEEK**

v.

**STATE of Maryland.**

**No. 46, Sept. Term, 2011.**

Court of Appeals of Maryland.

April 27, 2012.

</div>

Binny Miller (American University Washington College of Law, Criminal Justice Clinic, Washington, D.C.), on brief, for Petitioner.

Susannah E. Prucka, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, GREENE, ADKINS, BARBERA, ALAN M. WILNER, (Retired, Specially Assigned), DALE R. CATHELL, (Retired, Specially Assigned), JJ.

BARBERA, J.

Pursuant to Maryland Code (1974, 2006 Repl.Vol. & 2010 Supp.), § 12–401 of the Courts and Judicial Proceedings Article (CJ),[1] a criminal defendant convicted in the District Court is entitled to appeal that judgment to the Circuit Court, for a trial de novo. If convicted in the Circuit Court, the sentencing

---

1. Maryland Code (1974, 2006 Repl.Vol. & 2010 Supp.), § 12–401 of the Courts and Judicial Proceedings Article (CJ), entitled "Right of appeal generally," provides in pertinent part:

(b) *Criminal cases.*—In a criminal case:
(1) The State may appeal from a final judgment entered in the District Court:
(i) If the State alleges that the trial judge failed to impose the sentence specifically mandated by the Code; or
(ii) Granting a motion to dismiss, or quashing or dismissing a charging document.
(2) The defendant may appeal even from a final judgment entered in the District Court though imposition or execution of sentence has been suspended.

<div align="center">*     *     *</div>

(f) *De novo and on record appeals.*—In a civil case in which the amount in controversy exceeds $5,000 exclusive of interest, costs, and attorney's fees if attorney's fees are recoverable by law or contract, in any matter arising under § 4–401(7)(ii) of this article, and in any case in which the parties so agree, an appeal shall be heard on the record made in the District Court. *In every other case, including a criminal case in which sentence has been imposed or suspended following a plea of nolo contendere or guilty, and an appeal in a municipal infraction or Code violation case, an appeal shall be tried de novo.*
(g) *Right to jury trial.*—In a criminal appeal that is tried de novo:
(1) There is no right to a jury trial unless the offense charged is subject to a penalty of imprisonment or unless there is a constitutional right to a jury trial for that offense; and
(2) On the filing of a notice of appeal, the circuit court may stay a sentence of imprisonment imposed by the District Court and release the defendant pending trial in the circuit court.
(Emphasis added.)

judge is not limited by the sentence previously imposed in District Court and "may impose a more severe sentence" so long as the sentence is "authorized by law to be imposed as punishment for the offense." CJ § 12–702(c).[2] Petitioner, Muhammad Abdul–Maleek, was convicted in the District Court of Maryland sitting in Montgomery County, exercised his right to appeal, and was afforded a de novo trial by jury in the Circuit Court for Montgomery County. The jury likewise convicted Petitioner of theft, and the Circuit Court imposed a more severe sentence than that imposed by the District Court.

We issued a writ of certiorari to review Petitioner's assertion that the Circuit Court impermissibly "based [Petitioner's sentence] on the fact that he exercised his right to appeal and receive a *de novo* jury trial." We hold that Petitioner is entitled to resentencing because the court's comments at sentencing could cause a reasonable person to conclude that the sentence was based in part on Petitioner's exercise of his right to a de novo trial on appeal.

## I.

A detailed account of the facts underlying Petitioner's conviction is not necessary to resolution of the issue before this Court. To provide background, however, we include the following narrative, derived primarily from the testimony of Ms. Leyla Monroy, the victim of Petitioner's crime.

---

**2.** CJ § 12–702, entitled "Sentences following appeals," provides in pertinent part:

> (c) *More severe sentence imposed following de novo appeal.—If a defendant who appeals from a conviction in the District Court is convicted after a trial de novo on appeal, the appellate court may impose a more severe sentence than that imposed in the District Court,* but if the case is one in which the defendant was denied a jury trial under § 4–302(e)(2) of this article, the sentence may not be for more than 90 days except under the conditions prescribed in subsection (b) of this section. *Except as provided above, the appellate court may impose any sentence authorized by law to be imposed as punishment for the offense.*
> (Emphasis added).

On July 20, 2010, Ms. Monroy, was visiting the public library in Rockville Town Center and noticed her cell phone was missing. She called her phone, a male voice answered, and he indicated that he would return the cell phone if Ms. Monroy gave him fifty dollars. While initially reluctant, Ms. Monroy agreed to meet the man at a nearby location and to pay him the money.

Ms. Monroy met the man in a corridor between two establishments near the Rockville Town Square. She later identified Petitioner as the man she met and recognized his voice as the man who had answered her cell phone. Petitioner again told Ms. Monroy that he would not return her cell phone until she gave him the money. After some exchange between Ms. Monroy and Petitioner, Ms. Monroy finally capitulated. As Ms. Monroy was only carrying three twenty-dollar bills and Petitioner had indicated he wanted fifty dollars, commenting "[w]ell, do you want your phone or not, because you know, it's up to you," Ms. Monroy turned over all three bills. Upon receipt of the money, Petitioner then "just turned around and walked away."

Meanwhile, a parking enforcement officer, Jerry Adams, noticed the disagreement between Ms. Monroy and Petitioner. Adams testified that Petitioner explained that "he wanted to help and he wasn't the guy who [Ms. Monroy] talked to on the phone," and the man on the phone was Jerome, "a former student of [Petitioner]" who "looked homeless." Petitioner reacted by commenting "[y]ou're just parking enforcement." At that point, Adams stepped away to radio to the police. When he returned, Ms. Monroy had already given Petitioner forty dollars and Adams then observed her hand over her remaining twenty-dollar bill.

According to Adams, Petitioner then began to walk away but returned to show his driver's license to the officer, because, as Petitioner explained, "he didn't want any trouble, he wanted to, me to know that he was coming back; that he was just going to get her phone, he was coming back." Petitioner then walked away, but Adams maintained visual contact with

him for the duration and "just simply saw him turn around and come back." Petitioner gave the phone to Adams, to return to Ms. Monroy, as well as his business card, and he indicated that "he would try to get her money back." Petitioner then departed.

Shortly thereafter, the police arrived and Adams turned over Petitioner's business card to them. By using the information on the business card the police officers obtained Petitioner's residential address, visited that address and ultimately arrested Petitioner there.

## *Procedural Background*

Petitioner was charged in the District Court of Maryland with (1) obtaining by extortion money having a value of less than $500 in violation of Maryland Code (2002 & 2010 Supp.), § 3–701(b) of the Criminal Law Article (CR), and (2) stealing Ms. Monroy's cell phone having a value of $100, less than $1,000, in violation of CR § 7–104. On January 10, 2011, the District Court found Petitioner not guilty on the first count and guilty on the second. The court sentenced him to eighteen months' incarceration, sixteen months suspended, with one year of supervised probation upon release, and a fine of $500, $350 of which was suspended. The court also ordered Petitioner to pay restitution to Ms. Monroy in the amount of $60. That same day, Petitioner filed a Notice of Appeal from the District Court judgment.

Petitioner's two-day de novo jury trial in the Circuit Court for Montgomery County commenced on April 6, 2011, on the sole charge of theft. On April 7, 2011, the jury returned a guilty verdict. At the sentencing proceeding that afternoon, defense counsel argued that Petitioner should receive no jail time and unsupervised probation and, alternatively, should the court impose executed incarceration, the court should decline to order probation. The State argued, in part, that the nature of Petitioner's actions, "tak[ing] advantage of someone under these circumstances," warranted "executed incarceration." The State continued:

It's in light of that, Your Honor, the State is asking for executed incarceration. To give you an idea, [the District Court Judge], gave the defendant 18 months, suspend all but 60 days. That's neither here nor there. It's a de novo appeal. I would ask for more than that, Your Honor. The defendant had the opportunity to sort of let that lie, take responsibility for his actions. He did not do that. I would ask the Court for an executed incarceration above and beyond the 60 days. How far above and beyond, I will leave in the Court's sound judgment. Thank you.

The Court, after hearing from Petitioner, imposed its sentence, explaining:

Mr. Abdul–Maleek, you may indeed be a kind, caring, and conscientious individual, but none of those adjectives or descriptions apply to what you did to this young lady on this day. Nothing kind about it, nothing caring about it, nothing conscientious about it, quite the contrary, and I just, I'm at a loss for words.

An individual who has a job, has a family, to do something like this and the total disregard that you had for this young lady, I'm really at a loss. I mean, if you had a drug addiction and you did it to get the money to support your drug addiction, that doesn't make it right but at least there's some explanation.

Your attorneys did a very fine job on your behalf, notwithstanding the fact that that may have been a record, returning a verdict of five minutes or thereabouts, but that had nothing to do with your attorneys. It had more to do with the facts that were presented to the jury, and obviously, they didn't have any problems with that.

\* \* \*

**You have every right to go to trial in this case, which you did—not once, but twice. Ms. Monroy was victimized, and then she had to come back and testify in District Court; then she had to come back again and testify in the Circuit Court, and she had to do that**

**because you have every right to have all of those opportunities to put forth your position.** I am at a total loss.

The Court will impose a sentence of 18 months to the Montgomery County Detention Center. The Court will suspend all but eight months, and the Court will recommend the Pre–Release Center, place you on 18 months of supervised probation upon your release.

(Emphasis added.)

The sentencing court also explained that Petitioner was to comply with standard probation conditions, to submit to drug and alcohol testing as deemed appropriate, to have no contact with Ms. Monroy and to pay restitution to Ms. Monroy in the amount of sixty dollars. The court waived Petitioner's fines and court costs.

Petitioner timely filed a petition for writ of certiorari, which we granted. *Abdul–Maleek v. State*, 420 Md. 463, 23 A.3d 895 (2011). We now consider whether the Circuit Court's reference at sentencing to the fact that Petitioner exercised his de novo appeal right gave the appearance that the court based the sentence on an impermissible consideration.[3]

---

**3.** Petitioner framed the issue as two separate questions:
  I. Whether the circuit court violated Section 12–702(c) of the Maryland Courts & Judicial Proceedings Article when it increased the defendant's sentence based on the fact that he exercised his right to appeal and receive a *de novo* jury trial.
  II. Whether the circuit court violated the defendant's due process rights as guaranteed by the Fourteenth Amendment of the U.S. Constitution and Article 24 of Maryland Declaration of Rights as set forth in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) and *Colten v. Kentucky*, 407 U.S. 104 [92 S.Ct. 1953, 32 L.Ed.2d 584 (1972)].

(Footnote omitted). In his reply brief, Petitioner argues that the Circuit Court based its sentence on the impermissible consideration of Petitioner's exercise of his de novo appeal right. As we will reiterate *infra*, we review a sentence on three grounds: "(1) whether the sentence constitutes cruel and unusual punishment or violates other constitutional requirements; (2) *whether the sentencing judge was motivated by ill-will, prejudice or other impermissible considerations;* and (3) whether the sentence is within statutory limits." *Jackson v. State*, 364 Md. 192, 200, 772 A.2d 273, 277 (2001) (quoting *Gary v. State*, 341 Md. 513, 516, 671 A.2d 495, 496 (1996)) (internal quotation mark omitted).

## II.

### *A. Waiver*

■ Before we arrive at the merits of Petitioner's contentions, we must address the State's argument that Petitioner's contentions are not preserved for appellate review because he lodged no objection to the sentencing court's statements concerning his exercise of the statutory right to a de novo trial on appeal. Petitioner counters that requiring a defendant to object in the circumstances presented here, where the trial court's comments before imposing sentence referred to a right Petitioner had already exercised, would require counsel to risk subjecting her client to an increased sentence. This is so because, according to Petitioner, a court might seek retribution for defense counsel's contemporaneous suggestion of error; therefore, ordinary principles of waiver should not apply to the challenge presented here.

Maryland Rule 8–131(a) prescribes that, "[o]rdinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the

Because we decide this case on the grounds of "impermissible considerations," we need not determine whether there was a violation of any statutory or constitutional limitation. We note that, at oral argument, Petitioner agreed that the statute, referring to CJ § 12–702, unquestionably allows the court to impose a more severe sentence after a de novo appeal. Additionally, Petitioner was sentenced within the statutorily prescribed maximum penalty for the crime. *See* Md.Code (2002 & 2010 Supp.), § 7–104(g)(2)(i)–(ii) of the Criminal Law Article (CR) (establishing the maximum penalties as 18 months imprisonment, a $500 fine, or both, in addition to restoration of the property or payment of the value of the property or services). We also note that our prior decisions reflect that notions of fundamental fairness guide our analysis of what is considered an impermissible consideration. *See Jackson,* 364 Md. at 206–07, 772 A.2d at 281 (explaining that "[i]t is well settled in Maryland that fundamental to a defendant's right to a fair trial is an impartial and disinterested judge," "[t]his fundamental right of fairness extends to the sentencing phase of a trial," and, finally, "a defendant 'has a right to a trial in which the judge is not only impartial and disinterested, but who also has the appearance of being impartial and disinterested,'" and concluding that consideration of defendant's origin "from the city" was impermissible (internal quotation mark and citations omitted)). We believe that our restatement of the issue fairly encompasses Petitioner's assertions.

trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal." We have recognized in the limited context of review of sentences alleged to be inherently illegal that the failure to object will not preclude appellate review and that those sentences may be reviewed at any time. *E.g., Chaney v. State*, 397 Md. 460, 466, 918 A.2d 506, 509 (2007); *Walczak v. State*, 302 Md. 422, 427, 488 A.2d 949, 951 (1985). As we have explained, "[t]he *scope* of this privilege, . . . excluding waiver as a bar to relief, is narrow. . . . We have consistently defined this category of 'illegal sentence' as limited to those situations in which the illegality inheres in the sentence itself." *Chaney*, 397 Md. at 466, 918 A.2d at 509–10. Moreover, we have consistently recognized that allegations of impermissible considerations at sentencing are not "illegal sentences" subject to collateral or belated review and "must ordinarily be raised in or decided by the trial court. . . . [A]nd, subject to the appellate court's discretion under Maryland Rule 8–131(a), the defendant is not excused from having to raise a timely objection in the trial court." *Id.* at 466–67, 918 A.2d at 510.

Petitioner recognizes that his challenge does not fall within the narrow class of inherently illegal sentences to which the general rules of waiver do not apply. He asks, though, that we expand the application of the preservation exception to the circumstances of this case. We decline to do so, as there is no good reason why either the circumstances presented here should be exempt from the preservation requirement or the trial court should not have been given the opportunity to address at the time the concern that Petitioner now raises.

█ Despite the applicability of general preservation principles, however, we are not precluded absolutely from reviewing Petitioner's claim. We have explained time and again that Rule 8–131(a) grants an appellate court discretion to consider issues deemed to have been waived for failure to make a contemporaneous objection. *See Bible v. State*, 411 Md. 138, 148, 982 A.2d 348, 354 (2009) (plurality opinion) ("[A]n appel-

late court's review of arguments not raised at the trial level is discretionary, not mandatory. The use of the word 'ordinarily' clearly contemplates both those circumstances in which an appellate court will not review issues if they were not previously raised and those circumstances in which it will." (quoting *State v. Bell*, 334 Md. 178, 188, 638 A.2d 107, 113 (1994)) (internal quotation mark omitted)). This discretion, however, should be exercised with caution. *Chaney*, 397 Md. at 468, 918 A.2d at 511. In deciding whether to review an issue that has been waived, we should "[f]irst ... consider whether the exercise of ... discretion will work unfair prejudice to either of the parties.... Second, the appellate court should consider whether the exercise of its discretion will promote the orderly administration of justice." *Bible*, 411 Md. at 151–52, 982 A.2d at 356 (quoting *Jones v. State*, 379 Md. 704, 714–15, 843 A.2d 778, 784 (2004)) (final alteration in original).

In the matter *sub judice* we see no prejudice to either party should we consider this issue. There is, of course, no prejudice to Petitioner, as he has sought and been granted review of his claim of error. *See Bible*, 411 Md. at 152, 982 A.2d at 356. And, there is only *de minimis* prejudice to the State, as our review would not broach the underlying judgment of conviction but rather would be confined to resentencing, at which the same sentence could be imposed, based on proper considerations. Moreover, by addressing the issue presented, we are able to comment on the sentencing issue in the context of de novo appeals and thereby promote the "orderly administration of justice." *See id.*, 982 A.2d at 356. We therefore choose to exercise our discretion to consider the merits of Petitioner's claim.

### B.  Sentence Review

■   Petitioner's arguments reduce to the assertion that the sentencing court, in effect, penalized him for having exercised his right to a de novo appeal, as evidenced by the court's reference to that fact during sentencing. Petitioner asserts that the right to appeal must be "free and unfettered" by any vindictiveness on the part of the sentencing judge. (Quoting

*North Carolina v. Pearce,* 395 U.S. 711, 724, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).) Petitioner adds that the sentencing court's comments at least suggest impermissible considerations and he argues that, because the court's comments "give the appearance or inference of bias," the sentence must be vacated.

The State responds that, considering the entirety of the record, the Circuit Court did not impose a more severe sentence because Petitioner chose to appeal de novo from the District Court judgment, but rather because of the circumstances surrounding the crime. The State emphasizes that CJ § 12–702(c) permits the court to impose an increased sentence after a de novo appeal and there is no constitutionally-based presumption of vindictiveness in that context.

We begin with the recognition that "a trial judge has 'very broad discretion in sentencing.'" *Jones v. State,* 414 Md. 686, 693, 997 A.2d 131, 134–35 (2010) (quoting *Jackson v. State,* 364 Md. 192, 199, 772 A.2d 273, 277 (2001)). This Court, therefore, will only review a sentence on three grounds: "(1) whether the sentence constitutes cruel and unusual punishment or violates other constitutional requirements; (2) *whether the sentencing judge was motivated by ill-will, prejudice or other impermissible considerations;* and (3) whether the sentence is within statutory limits." *Jackson,* 364 Md. at 200, 772 A.2d at 277 (quoting *Gary v. State,* 341 Md. 513, 516, 671 A.2d 495, 496 (1996)) (internal quotation mark omitted). Petitioner's contentions fall under the second basis for review.

We have observed that

[a] judge should fashion a sentence based upon the facts and circumstances of the crime committed and the background of the defendant, including his or her reputation, prior offenses, health, habits, mental and moral propensities, and social background. The judge is accorded this broad latitude to best accomplish the objectives of sentencing—punishment, deterrence and rehabilitation.

*Jackson,* 364 Md. at 199, 772 A.2d at 277 (citation and quotation marks omitted) (alteration in original). We have recog-

nized also that de novo appeal proceedings occupy a "unique position as both an appeal and a trial," *Stone v. State*, 344 Md. 97, 105, 685 A.2d 441, 444 (1996), and such proceedings are to be treated "as wholly original proceedings, that is, as if no judgment had been entered in the lower court," *id.*, 685 A.2d at 444 (quoting *Hardy v. State*, 279 Md. 489, 493, 369 A.2d 1043, 1046 (1977)). In that vein, CJ § 12–702 permits the Circuit Court to impose any lawful sentence on a defendant who has exercised the right to de novo appeal, including a more severe sentence than that imposed by the District Court originally.

In *Johnson v. State*, 274 Md. 536, 539, 336 A.2d 113, 115 (1975), we reviewed the sentencing court's explicit comments referring to the defendant's decision to enter a plea of not guilty and exercise his right to a trial. The sentencing court had explained, "if you had come in here with a plea of guilty ... you would probably have gotten a modest sentence," indicating that the court "at least to some degree, punished Johnson more severely because he failed to plead guilty and, instead, stood trial." *Id.* at 543, 336 A.2d at 117. We reviewed the court's comments in full and concluded that "the words just quoted [that Johnson would have received a more lenient sentence had he pleaded guilty] manifest that an impermissible consideration may well have been employed. Any doubt in this regard must be resolved in favor of the defendant." *Id.*, 336 A.2d at 117. This was true even though "a reading of the judge's remarks in full d[id] not necessarily demonstrate that a more severe sentence was imposed" based on Johnson's exercise of his right to trial. *Id.*, 336 A.2d at 117.

We looked to our reasoning and holding in *Johnson* to distinguish the circumstances of *Jennings v. State*, 339 Md. 675, 664 A.2d 903 (1995). In *Jennings*, the petitioner asserted that the sentencing court impermissibly considered his expression, or lack thereof, of remorse. *Id.* at 681, 664 A.2d at 906. The petitioner argued that the "court may not consider a defendant's failure to acknowledge guilt after conviction nor may it punish the defendant for 'protestations of innocence' "

and forcing a defendant to acknowledge guilt "violates the defendant's privilege against self-incrimination." *Id.,* 664 A.2d at 906. In rejecting those arguments, we discussed our decision in *Johnson. Id.* at 687, 664 A.2d at 909. We recognized that in *Johnson* this Court discussed the permissible scope of sentencing criteria and emphasized transcript portions that explicitly referred to Johnson's decision to plead not guilty. *Id.,* 664 A.2d at 909. We then suggested in *Jennings* that, in *Johnson,* "absent the explicit reference to the defendant's failure to plead guilty and the modest sentence that would have produced, the Court would not have found Johnson's sentence flawed." *Id.,* 664 A.2d at 909.

■ Turning to the matter *sub judice,* the record reflects that the Circuit Court considered several permissible factors, including the facts and circumstances of the crime, Petitioner's previous criminal record, and Petitioner's family background. The sentencing court, perhaps because the prosecutor himself injected the issue in his sentence recommendation, went further and explicitly mentioned Petitioner's exercise of his de novo appeal right:

> You have every right to go to trial in this case, which you did—not once, but twice. Ms. Monroy was victimized, and then she had to come back and testify in District Court; then she had to come back again and testify in the Circuit Court, and she had to do that because you have every right to have all of those opportunities to put forth your position.

Reading these statements in the context of the entire sentencing proceeding (which necessarily includes consideration of the State's explicit request that the court impose a higher sentence than the District Court had imposed), we do not conclude that the sentencing court *actually considered* the fact of Petitioner's exercise of his right to a de novo appeal and imposed a more severe sentence as punishment for having done so. To the contrary, we infer that the judge's comments were intended simply to explain to the victim the reason for her return to court for a second trial, while, at the same time, to underscore Petitioner's entitlement to avail himself of a

right granted him by our system of justice. Likewise, we are quite conscious of the doctrine that judges are presumed to know the law and apply it correctly, *Medley v. State*, 386 Md. 3, 7, 870 A.2d 1218, 1220 (2005), and we are confident the court did precisely that here.

All that said, we are constrained nonetheless to remand this case for resentencing because the court's explicit reference to Petitioner's exercise of his de novo appeal right could "lead a reasonable person to infer that [the court] *might* have been motivated" by an impermissible consideration. *Jackson*, 364 Md. at 207, 772 A.2d at 281 (emphasis added). In this circumstance, we are bound to resolve any doubt in Petitioner's favor.

**SENTENCE OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY IS VACATED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO RE-SEN-TENCE IN CONFORMANCE WITH THIS DECISION; COSTS IN THIS COURT TO BE PAID BY MONTGOM-ERY COUNTY.**

BELL, C.J., GREENE and CATHELL, JJ., Concur.

BELL, C.J., concurring, in which GREENE and CATHELL, JJ., join.

We granted the Petition for Certiorari filed by the petitioner, Mohammad Abdul–Maleek, *Abdul–Maleek v. State*, 420 Md. 463, 23 A.3d 895 (2011), to decide whether, in referencing, at sentencing, the fact that the petitioner exercised his de novo appeal right, and subsequently increasing the sentence imposed by the District Court, the Circuit Court for Montgomery County violated Maryland Code (1957, 2006 Repl.Vol., 2011 Supp.) § 12–702(c) of the Courts & Judicial Proceedings Article.[1] In the State's answer to the Petition, it noted the

---

1. The petitioner initially framed the issue as two separate questions:

    I. Whether the circuit court violated Section 12–702(c) of the Maryland Courts & Judicial Proceedings Article when it in-

petitioner's failure to object to the court's comments or the sentence itself and challenged the petitioner's right to direct appellate review of his sentence.

Exercising our discretion, under Maryland Rule 8–131(a), to consider unpreserved issues,[2] we rejected the State's challenge

---

creased the defendant's sentence based on the fact that he exercised his right to appeal and receive a *de novo* jury trial.

II.  Whether the circuit court violated the defendant's due process rights as guaranteed by the Fourteenth Amendment to the U.S. Constitution and Article 24 of Maryland Declaration of Rights as set forth in *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) and *Colten v. Kentucky,* 407 U.S. 104, 112, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972).

(Footnote omitted). The focus of both questions was the court's reference to the petitioner's exercise of one of his rights and its effect on the sentence it imposed. In his reply brief, the petitioner stated the argument more directly; he argues that the Circuit Court based its sentence on the impermissible consideration of the petitioner's exercise of his de novo appeal right.

**2.**  The Court reasons:

"Despite the applicability of general preservation principles ... we are not precluded absolutely from reviewing Petitioner's claim. We have explained time and again that Rule 8–131(a) grants an appellate court discretion, nevertheless, to consider issues deemed to have been waived for failure to make a contemporaneous objection. *See Bible v. State,* 411 Md. 138, 148, 982 A.2d 348, 354 (2009) (plurality opinion) ("[A]n appellate court's review of arguments not raised at the trial level is discretionary, not mandatory. The use of the word 'ordinarily' clearly contemplates both those circumstances in which an appellate court will not review issues if they were not previously raised and those circumstances in which it will." (quoting *State v. Bell,* 334 Md. 178, 188, 638 A.2d 107, 113 (1994)) (internal quotation mark omitted)). This discretion, however, should be exercised with caution. *Chaney,* 397 Md. at 468, 918 A.2d at 511. In deciding whether to review an issue that has been waived, we should "[f]irst ... consider whether the exercise of ... discretion will work unfair prejudice to either of the parties.... Second, the appellate court should consider whether the exercise of its discretion will promote the orderly administration of justice." *Bible,* 411 Md. at 151–52, 982 A.2d at 356 (quoting *Jones v. State,* 379 Md. 704, 714–15, 843 A.2d 778, 784 (2004)) (final alteration in original).

"In the matter *sub judice* we see no prejudice to either party should we consider this issue. There is, of course, no prejudice to Petitioner, as he has sought and been granted review of his claim of error. *See Bible,* 411 Md. at 152, 982 A.2d at 356. And, there is only *de minimis* prejudice to the State, as our review would not broach the underlying judgment of conviction but rather would be confined to resentencing,

and reached the merits of the issues presented. On the merits, we hold that the court erred and, accordingly, that the petitioner must be resentenced. We reason that "the court's explicit reference to Petitioner's exercise of his de novo appeal right could 'lead a reasonable person to infer that [the court] *might* have been motivated' by an impermissible consideration." *Abdul–Maleek v. State*, Op. at 74, 43 A.3d at 391 (quoting *Jackson v. State*, 364 Md. 192, 207, 772 A.2d 273, 281 (2001) (emphasis added)). Indeed, the Court expressly states, in that regard, that, upon review of the record, it does not believe "that the sentencing court *actually considered* the fact of Petitioner's exercise of his right to a de novo appeal and imposed a more severe sentence as punishment for having done so." *Abdul–Maleek*, Op. at 73, 43 A.3d at 391 (emphasis in original).

I agree with the result reached in this case and, therefore, join the judgment. The petitioner is, as the Court concludes, entitled to appellate review of his sentence and he is entitled to a resentencing. I do not agree with the rationale given by the Court for either conclusion. I write separately to explicate my reasons for believing that this case is correctly decided.

The petitioner's objection to the court's sentencing decision was, I believe, preserved. Accordingly, there was, and is, no need for the Court to exercise its discretion to reach the issue.

The purpose of the preservation rule, requiring an objection to preserve a matter for appellate review, is to guard against "sandbagging" the judge. *See In Re Kaleb K*, 390 Md. 502, 513, 889 A.2d 1019, 1025 (2006); *Brice v. State*, 254 Md. 655, 661, 255 A.2d 28, 31 (1969); *Banks v. State*, 203 Md. 488, 495, 102 A.2d 267, 271 (1954). There is no "sandbagging" here.

---

at which the same sentence could be imposed, based on proper considerations. Moreover, by addressing the issue presented, we are able to comment on the sentencing issue in the context of de novo appeals and thereby promote the "orderly administration of justice." *See id.*, 982 A.2d at 356. We therefore choose to exercise our discretion to consider the merits of Petitioner's claim."

*Abdul–Maleek*, Op. at 69–70, 43 A.3d at 389.

*See also Walczak v. State,* 302 Md. 422, 427, 488 A.2d 949, 951 (1985) ("When [a] trial court has allegedly imposed a sentence not permitted by law, the issue should ordinarily be reviewed on direct appeal even if no objection was made in the trial court."). As judges are presumed to know the law and to apply it correctly, *Thornton v. State,* 397 Md. 704, 736, 919 A.2d 678, 697 (2007), the petitioner well could have assumed, and most probably, did assume, that the trial judge was saying what he meant and meant what he was saying. The question was ripe for appellate review when the trial judge stated his sentencing rationale. An objection at that point is, and in this case, would have been, an useless gesture. It also should be acknowledged that interposing an objection at this point, rather than having an ameliorating effect, could ensure that such violations of right are shielded from redress. If, for example, having been made aware of the petitioner's specific concerns, the trial judge simply denied that he was using an improper consideration, the right to redress would be the victim; the petitioner's right to redress will not be able to be vindicated.

The court's reference to the petitioner's exercise of his right to de novo appeal, clearly expressed displeasure with that decision and conveyed the assumption, not simply the implication, that it was just another way of further harassing the victim. It would be unreasonable to expect any defendant, already at an apparent disadvantage and aware of the court's evident, if not explicit disapproval, under these circumstances, to lodge an objection, which has to, in effect, accuse the judge of acting inappropriately, the basis of which are the very same disapproval statements. Such an objection could antagonize the court and make it even more displeased, thus, subjecting the defendant to yet another, perhaps greater, risk. This is especially the case when the court's critical remarks follow the State's demand for a greater sentence and immediately precede the imposition of the increased sentence. This, it strikes me, is an equally important reason why this Court is not precluded from reviewing the merits of the petitioner's appeal.

On the merits, I do not believe that this is a close case and I certainly do not believe that it is an "appearance" case. It is clear to me that the sentence imposed not only gave the appearance of being, but was, in fact, based on the petitioner's exercise of his appeal right, which under the circumstances was an impermissible sentencing consideration. Indeed, it is my position that there was no conclusion that could be drawn from the trial judge's remarks referencing the petitioner's exercise of his right to appeal other than that the fact that the petitioner exercised his right to a de novo appeal was the basis for the enhanced sentence that the trial court imposed. The circumstances of the case bear this out.

After being tried in the District Court of Maryland, sitting in Montgomery County, of extortion, pursuant to Maryland Code (2002, 2010 Supp.), § 3–701(b) of the Criminal Law Article [3] ("CR"), and theft, CR § 7–104(g)(2),[4] and convicted only of the latter, receiving a period of incarceration, a suspended sentence, probation, a fine and being required to pay restitution, the petitioner exercised his right to de novo appeal and elected a jury trial in the Circuit Court. Following his conviction, the State, at sentencing, argued for incarceration, asserting that the nature of the petitioner's actions, "tak[ing]

---

3. § 3–701(b) of the Criminal Law Article provides:

"(b) Obtaining or attempting to obtain property prohibited.—A person may not obtain, attempt to obtain, or conspire to obtain money, property, labor, services, or anything of value from another person with the person's consent, if the consent is induced by wrongful use of actual or threatened:
"(1) force or violence;
"(2) economic injury; or
"(3) destruction, concealment, removal, confiscation, or possession of any immigration or government identification document with intent to harm the immigration status of another person."

4. 7–104(g)(2) of the Criminal Law Article provides:

"(2) Except as provided in paragraphs (3) and (4) of this subsection, a person convicted of theft of property or services with a value of less than $1,000, is guilty of a misdemeanor and:
"(i) is subject to imprisonment not exceeding 18 months or a fine not exceeding $500 or both; and
"(ii) shall restore the property taken to the owner or pay the owner the value of the property or services.

advantage of someone under these circumstances," warranted "executed incarceration," greater than that imposed by the District Court. During the presentation of its argument and, in context, in support of its incarceration request, the State mentioned the petitioner's de novo appeal:

"It's in light of that, Your Honor, the State is asking for executed incarceration. To give you an idea, [the District Court Judge], gave the defendant 18 months, suspend all but 60 days. That's neither here nor there. It's a de novo appeal. I would ask for more than that, Your Honor. The defendant had the opportunity to sort of let that lie, take responsibility for his actions. He did not do that. I would ask the Court for an executed incarceration above and beyond the 60 days. How far above and beyond, I will leave in the Court's sound judgment. Thank you."

In imposing a sentence greater than that imposed by the District Court, the court also referenced the petitioner's exercise of his appeal right:

*"You have every right to go to trial in this case, which you did—not once, but twice. Ms. Monroy was victimized, and then she had to come back and testify in the Circuit Court, and she had to do that because you have every right to have all of those opportunities to put forth your position.* I am at a total loss."

(Emphasis added). It did so after expressing consternation at how the petitioner treated the victim, lamenting the lack of an explanation for his behavior and noting that the jury had little trouble, taking only five minutes to do so, sorting out what happened between the victim and the petitioner. A sentence was imposed immediately after the de novo appeal comments.

The crux of the petitioner's arguments is that the sentencing court penalized him for having exercised his right to a de novo appeal. This is demonstrated, he submits, by the court's reference to that fact during sentencing, and its increase of his sentence of executed incarceration by 400 percent. In this regard, the petitioner argues that the court's comments did more than simply give "an appearance of bias" since, although

it is not possible to discern, with certainty, the weight the court gave to the fact that the petitioner exercised his right to a de novo appeal, the very fact that the court referred to the petitioner's exercise of this right twice, and the immediate proximity of these comments to the announcement of the petitioner's sentence, demonstrate that it, at least, played a part in the Circuit Court's ultimate sentence.

In response, the State asserts that it can not be said, based on a review of the record as a whole, that the Circuit Court impermissibly imposed a more severe sentence on those grounds. The circumstances surrounding the crime counsel otherwise, it submits. The State also notes that, pursuant to CJ § 12–702(c), a circuit court may impose an increased sentence after a de novo appeal. The state emphasizes that there is no constitutionally based presumption of vindictiveness in such a context.

While it is true that "a trial judge has 'very broad discretion in sentencing,'" *Jones v. State*, 414 Md. 686, 693, 997 A.2d 131, 134–35 (2010) (quoting *Jackson*, 364 Md. at 199, 772 A.2d at 277), the judge must "'fashion a sentence based upon the facts and circumstances of the crime committed and the background of the defendant, including his or her reputation, prior offenses, health, habits, mental and moral propensities, and social background.'" *Jackson*, 364 Md. at 200, 772 A.2d at 277 (quoting *Poe v. State*, 341 Md. 523, 532, 671 A.2d 501, 505 (1996)). This Court may review such a sentence on three grounds: "(1) whether the sentence constitutes cruel and unusual punishment or violates other constitutional requirements; (2) *whether the sentencing judge was motivated by illwill, prejudice or other impermissible considerations;* and (3) whether the sentence is within statutory limits." *Jackson*, 364 Md. at 200, 772 A.2d at 277 (quoting *Gary v. State*, 341 Md. 513, 516, 671 A.2d 495, 496 (1996)) (internal quotation marks omitted).

The petitioner's contentions, as the Court correctly notes, *Abdul–Maleek*, Op. at 71–72, 43 A.3d at 390, fall under the second basis for review. Applying these principles to the facts

of the case *sub judice,* I, like the petitioner, believe there is sufficient basis for this Court to conclude that the Circuit Court, in fact, *actually,* and impermissibly, based its decision of increased incarceration on the petitioner's decision to exercise his right to appeal.

I do not disagree with the majority, that "the Circuit Court considered several permissible factors, including the facts and circumstances of the crime, Petitioner's previous criminal record, and Petitioner's family background." *Abdul–Maleek,* Op. at 73, 43 A.3d at 391. Indeed, had the sentencing judge simply ended his commentary after chastising the petitioner for his conduct, it is quite likely that this issue would not be here. Not satisfied with expressing consternation with respect to the petitioner's conduct and finding it to be inexplicable, he went further, explicitly mentioning and, in so doing, I submit, faulting, the petitioner's exercise of his de novo appeal right:

"You have every right to go to trial in this case, which you did—not once, but twice. Ms. Monroy was victimized, and then she had to come back and testify in the District Court; then she had to come back again and testify in the Circuit Court, and she had to do that because you have every right to have all of those opportunities to put forth your position."

Viewing the court's remarks in their entirety and in context, it is hard to imagine that it was not, at the very least, a basis for the Circuit Court's sentencing decision. Indeed, read in the context of the entire sentencing proceeding, it is readily apparent from these statements that the sentencing court not only considered the fact of the petitioner's exercise of his right to a de novo appeal, it used that fact to support the imposition of a more severe sentence as punishment. As a matter of fact, there is no other explanation for the references. There simply was no reason for the court to mention the petitioner's exercise of appeal rights if it played no part in its sentencing analysis and imposition.

Even without the explicit references, it is hard to make a case that the court's sentencing decision did not take account

of, and factor in, the petitioner's exercise of his appeal rights. It is one thing, and justifiable, to focus on, and take account of a victim's treatment at the hands of her victimizer; it is quite another, and not justifiable, when that treatment is expanded to include post arrest activities of the then defendant, that are guaranteed and, thus, protected by law. In other words, I submit that it was enough to trigger "impermissible considerations" concerns when the court commented on the victim's being forced to testify more than once when the only reason for that need was an action by the defendant that was authorized by law.

To be sure, judges are presumed to know the law and apply it correctly, *Medley v. State*, 386 Md. 3, 7, 870 A.2d 1218, 1220 (2005). That presumption does not, and should not trump a petitioner's entitlement to resentencing if it even appears that the court's comments "could cause a reasonable person to question the impartiality of the judge." *Jackson*, 364 Md. at 207, 772 A.2d at 281–82. A defendant's right to a fair trial should be afforded its due weight, and in those cases where there exists some ambiguity about a judge's impartiality, we are, as the majority recognizes, bound to resolve any such doubt in the petitioner's favor. *Abdul–Maleek*, Op. at 74, 43 A.3d at 391. Here, I do not believe that there exists any ambiguity as to the court's statements. The comments made by the court in the case *sub judice* do more than raise a question as to the judge's impartiality; they demonstrate that conclusively there is one and that it has substance.

Judges GREENE and CATHELL have authorized me to state that they join in this concurring opinion.